Michael SHAKMAN, et al., Plaintiffs,

and

Horace Lindsey, Petitioner-Appellant,

v.

DEMOCRATIC ORGANIZATION OF COOK COUNTY, et al., Defendants,

and

Edmund L. Kelly, et al., Respondents-Appellees.

No. 82–3079.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1983.

Decided July 5, 1983 *.

Opinion Sept. 21, 1983.

Certiorari Denied Oct. 17, 1983.
See 104 S.Ct. 279.

Patrick T. Murphy, Chicago, Ill., for petitioner-appellant.

Rick Halprin, Ben. Atty., Chgo. Park Dist., John J. Verscaj, Bell, Boyd & Lloyd, Chicago, Ill., for respondents-appellees.

Before CUDAHY and ESCHBACH, Circuit Judges, and SWYGERT, Senior Circuit Judge.

* This appeal was originally decided by unreported order on July 5, 1983. *See* Circuit Rule 35. The court has subsequently decided to issue the decision as an opinion.

**1308**

PER CURIAM.

This appeal concerns the scope of the *Shakman* decree with respect to highranking, policymaking public employees. Specifically, the question presented is whether the Superintendent of Employment for the Chicago Park District is a policymaker or confidential employee such that he is excluded from the first amendment's protection from harassment for his political views. We affirm the district court's judgment that the position of Park Superintendent of Employment is exempt from the *Shakman* decree.

I

The facts are undisputed. The Chicago Park District ("Park") is governed by the Chicago Park Commission ("Commission") which is composed of five commissioners who are appointed by the Mayor of Chicago to serve staggered five-year terms. Ill.Rev. Stat. ch. 105 ¶ 333.3 (1979 & Supp.1982–83). These commissioners are authorized to appoint a superintendent of employment for a six-year term to serve under their direction and supervision. *Id.,* ch. 24½ § 79. The Superintendent of Employment is one of eight Park employees, including the commissioners themselves, who are exempt from the Illinois Civil Service Code. *Id.,* ch. 24½ § 90. The Superintendent of Employment and two Park commissioners are members of the Park's Civil Service Board. *Id.,* § 79. As such, he may not be removed except for palpable incompetence or malfeasance in office, and his removal is subject to review by the Illinois courts. *Id.*

The Park code defines the duties of the superintendent as:

The superintendent of employment shall: (a) Be the head of the department of personnel and Civil Service and shall have the management and control of all matters pertaining hereto; (b) Be the personnel officer of the park district; and shall, under the supervision of the Board of Commissioners and the Civil Service Board, administer and enforce the Civil Service law and rules of the Civil Service Board and shall exercise observation of all employees with regard to the adequate performance of their duties, their conformity to the rules, and to the requirements of their work, their leaves, their absences, and their efficiency records and any and all conditions and circumstances relating to their responsibilities; (c) Supervise the medical, safety, employees' activities and unemployment compensation divisions; (d) Enforce all of the law of the state and provisions of this Code in relation to matters pertaining to public health, and sanitary conditions of the Chicago Park District; and (e) Supervise such other functions and responsibilities as may be assigned to this department by ordinance or by the direction of the Civil Service Board or the Board of Commissioners.

Horace Lindsey, Park Superintendent of Employment from January 1977 to January 1983, was, as he admits in his pleadings, a highranking bureaucrat who exercised various powers of management, control, enforcement, supervision, and policy formulation. He supervised 79 employees and, along with the Park General Superintendent, made all of the Park's hiring decisions. He was responsible only to the Commissioners and his acts were subject to public scrutiny. As a member of the Park's Civil Service Board, he was responsible for the formulation and administration of civil service examinations for Park employees. He was charged with implementation of the *Shakman* decree. Also, in answer to interrogatories prepared by Park counsel in consultation with Lindsey for an earlier *Shakman* proceeding, Lindsey sought exemption of his position from the *Shakman* decree on the basis of the position's policymaking and confidential nature.

Lindsey was appointed Park Superintendent of Employment in January 1977 to serve until January 1983. In September 1982 the Commission renewed his contract to cover the period September 1982 through September 1988. Sometime later, Lindsey's support for Richard M. Daley for mayor of Chicago in the upcoming Chicago Democratic primary became generally known. In November 1982 the Commission rescinded Lindsey's second contract on the grounds

that the Commission lacked authority to enter into the contract.

Alleging that the rescission was in reality a firing for the expression of his political beliefs in violation of a 1980 consent decree entered into by the Park in the principal case, *Shakman v. Democratic Organization of Cook County* (No. 69 C 2148 N.D.Ill.), Lindsey sought a rule to show cause and a contempt finding against the Park and several commissioners.** Defendants filed a motion to dismiss and a "statement of facts" accompanied by assorted documents. Defendants argued that these documents combined with Lindsey's pleadings "conclusive[ly]" established, as a matter of law, that the position of Superintendent of Employment was exempt from the *Shakman* decree. Lindsey's response, accompanied by an affidavit, was that the Illinois State Legislature has "preempted" the decision whether the Park Superintendent of Employment was protected by the *Shakman* decree. Lindsey asked the court to deny the motion to dismiss and set the case for an immediate hearing.

The district court granted defendants' motion to dismiss, observing

> It is the considered opinion of this Court that the position of Superintendent of Employment is the very type that must be exempted from the constraints of the Shakman decree. Given the amount of discretion and authority enjoyed by the Superintendent of Employment and given the closeness with which the Superintendent of Employment works with the Park District Superintendent and other high-ranking officials of the District and the City of Chicago, it is clear that the utmost of confidentiality is required to effectively carry out the position.

On appeal Lindsey asks us to reverse the district court, but it is unclear whether he seeks a hearing or believes we can or should reach the merits. He does not discuss the standard of review or what a hearing (before the district court judge as a factfinder) would accomplish. Defendants assert that

the standard of review is clear error, citing *Barnes v. St. Catherine's Hospital*, 563 F.2d 324 (7th Cir.1977), and *Schwerman Trucking Co. v. Gartland Trucking Co.*, 496 F.2d 466 (7th Cir.1974).

## II

We recently reviewed the policymaker exception to the first amendment's protection of public employees. In *Nekolny v. Painter*, 653 F.2d 1164 (7th Cir.1981), we articulated the test as "whether the position held by the individual authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Id.* at 1170. This articulation is drawn from *Illinois State Employees Union v. Lewis*, 473 F.2d 561, 564 (7th Cir.1972), *cert. denied*, 410 U.S. 928, 93 S.Ct. 1364, 35 L.Ed.2d 580 (1973), and *Elrod v. Burns*, 427 U.S. 347, 367–68, 96 S.Ct. 2673, 2686–87, 49 L.Ed.2d 547 (1976) (plurality opinion of Brennan, J.).

■ Lindsey concedes that if this is the correct test, the position of Park Superintendent of Employment is exempt from the *Shakman* decree. As the Park's second highest employee and as a member of the Park's Civil Service Board there is no question that Lindsey is authorized to provide meaningful input into Park employment policies and goals. *See Nekolny, supra.* Because he works closely with the commissioners and other governments' high officials, considerations of personal loyalty are appropriate. *See Lewis, supra.* Lindsey's responsibilities are not narrowly defined and are of a broad scope. *See Elrod, supra.* As a member of the Civil Service Board, he acts as more than an advisor because his vote directly affects Park employment policy. *See id.* Indeed, we agree with the district court that it is difficult to conceive of any exempt position if the Park Superintendent of Employment is not also exempt.

■ Lindsey, however, chooses to discount the *Nekolny, Lewis,* and *Elrod* formu-

---

** Lindsey also sued Edward Vrdolyak and Mayor Byrne. The former defendant was voluntarily dismissed. Because of the disposition of this case, we do not discuss the allegations against Mayor Byrne.

lations and, instead, focuses upon the *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980), test:

> [T]he ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

According to Lindsey the Illinois legislature, by providing that the Park Superintendent of Employment can only be removed for incompetence or malfeasance, has determined that party affiliation is not an appropriate requirement for effective performance of the position. This determination, according to Lindsey, preempts our analysis of the policymaker exemption.

The argument has a superficial appeal and may reveal the wisdom of Justice Powell's admonition in *Elrod* that formulating standards for some patronage practices may be difficult. 427 U.S. at 377 n. 1, 96 S.Ct. at 2691 n. 1 (Powell, J., dissenting). The argument, however, obscures the purpose of the policymaker exemption. This is to ensure that the first amendment's protection not interfere with the workings of democratic governments and the ability of duly elected officials to implement their policies. As we observed in *Nekolny,* "[a] narrow definition of who is a policymaker necessarily increases the chances of 'undercut[ting] . . . the implementation of the policies of the new administration, policies presumably sanctioned by the electorate.' *Elrod,* 427 U.S. at 367 [,96 S.Ct. at 2686]. The ability of the government to implement the will of the people is fundamental to our system of representative democracy." 653 F.2d at 1169–70.

Of course, "the determination of status as a policymaker in many cases presents a difficult factual question." *Nekolny,* 653 F.2d at 1169 (citation omitted). Whatever the meaning of the Illinois statute at issue here, Lindsey offers no reason why the stat-

ute should operate as more than one fact in that calculus. Here it is the only fact opposing application of the policymaker exemption, and it is far outweighed by every other aspect of the position. We agree with the district court's assessment of the facts: the position of Park Superintendent of Employment is exempt from the *Shakman* decree.

The judgment of the district court is affirmed.