Andrew **RODEZ**, Plaintiff,

v.

**VILLAGE OF MAYWOOD, a Municipal corporation; Joe W. Freelon; Lonzia Casteel; Gary Woll; Norm Hendle; and Mel Pratt, Defendants.**

No. 86 C 927.

United States District Court,
N.D. Illinois, E.D.

July 18, 1986.

Robert S. Minetz, David J. Santori, Malato & Stein, Chicago, Ill., for plaintiff.

Peter M. Rosenthal, Lisa A. Lett, Ancel, Glink, Diamond, Murphy & Cope, P.C., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

In Count I of his five-count complaint, plaintiff, Andrew Rodez, alleges, pursuant to 42 U.S.C. § 1983, that defendants violated his due process and first amendment rights when they discharged him from his position as Maywood's Chief of Police on May 2, 1985. In Counts II through V of the complaint, Rodez raises various state law claims.

Defendants have moved to dismiss Rodez' federal claims, pursuant to Fed.R. Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. Defendants contend that: (1) Rodez does not have a constitutionally protected property interest in his position as police chief; (2) Rodez' dismissal did not stigmatize him in any way that invoked his constitutionally protected liberty interest; and (3) Rodez, as Police Chief, held a high level, policymaking position, and he therefore could be dismissed from his position for political reasons. For the reasons set forth below, the court denies in part, and grants in part, defendants' motion to dismiss.

### I. Motion To Dismiss

Under the federal rules, a court may dismiss a complaint for failure to state a claim only if a plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must accept as true all material facts well pleaded in the complaint, and must make all reasonable inferences in the light most favorable to the plaintiff. *City of Milwaukee v. Saxbe*, 546 F.2d 693, 704 (7th Cir.1976). A complaint "must state either direct of inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory," *Carl Sandburg Village Condominium Association No. 1 v. First Condominium Development Co.*, 758 F.2d 203, 207 (7th Cir.1985), and the court need not strain to find inferences available to the plaintiff but not apparent on the face of the complaint.

*Coates v. Illinois State Board of Education,* 559 F.2d 445, 447 (7th Cir.1977).

## II. Due Process

The Due Process Clause provides that a state may not deprive an individual of his substantive right to life, liberty or property without according him constitutionally adequate procedures. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). In this case, Rodez alleges that defendants deprived him of his right to property and liberty by firing him without first notifying him of the charge or holding a hearing.[1]

### A. Property Interest

"Property interests are not created by the Constitution, 'they are created and

1. There is no dispute that defendants failed to notify Rodez of the charge and hold a hearing before or after the discharge. Defendants merely sent Rodez a Notice of Dismissal which provided:

> At the direction of the majority of the Village Board Members, I am hereby terminating your employment with the Village of Maywood effective 5:00 p.m. Friday, May 3, 1985. The Village Board indicated that their decision was political and that they were generally dissatisfied with your performance and the visibility of the Police Department.
>
> You may receive all time due, sick leave, vacation from the Village Finance Department upon your departure.
>
> I regret the loss of your services.

*See* Exhibit "A" to Exhibit "1" to the Petition For Removal.

2. In addition, Rodez alleges that he had a property interest in his position of Police Chief by virtue of Ill.Rev.Stat. ch. 24, ¶ 10–2.1–4, which deals with the appointment of members of the police and fire departments. That section provides in part:

> The board of fire and police commissioners shall appoint all officers and members of the fire and police departments of the municipality, including the chief of police and the chief of the fire department, unless the council or board of trustees shall by ordinance as to them otherwise provide; except that in any municipality which adopts or has adopted this Division 2.1 and also adopts or has adopted Article 5 of this Code, the chief of police and the chief of the fire department shall be appointed by the municipal manager, if it is provided by ordinance in such municipality that such chiefs, or either of them, shall not be appointed by the board of fire and police commissioners.

their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Cleveland,* 105 S.Ct. at 1491 (*quoting Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). To have a property interest in a benefit, such as continued employment, a person "must have more than an abstract need or desire for it." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. He or she must have "a legitimate claim of entitlement" to the benefit. *Id.*

Rodez contends that Maywood Village Code § 3.04(e)(2) gave him a property interest in his continued employment as Maywood's Chief of Police.[2] Section 3.04(e)(2)

> If the chief of the fire department or the chief of the police department or both of them are appointed in the manner provided by ordinance, they may be removed or discharged by the appointing authority. In such case the appointing authority shall file with the corporate authorities the reasons for such removal or discharge, which removal or discharge shall not become effective unless confirmed by a majority vote of the corporate authorities.

Section 10–2.1–17, which deals with the removal or discharge of police and fire department members, echoes Section 10–2.1–4:

> Except as hereinafter provided, no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. If the chief of the fire department or the chief of the police department or both of them are appointed in the manner provided by ordinance, they may be removed or discharged by the appointing authority. In such case the appointing authority shall file with the corporate authorities the reasons for such removal or discharge, which removal or discharge shall not become effective unless confirmed by a majority vote of the corporate authorities.

Both of these provisions give the appointing authority, in this case the Maywood Village Manager, the power to appoint and discharge the chiefs of the fire and police departments according to local ordinance. The only statutory conditions on the Village Manager's authority to discharge are the requirements that he file the reasons for the discharge with the corporate authorities, and that a majority of the corporate authorities confirm the discharge in order to make it effective.

provides that the Village Manager shall have the power "[t]o appoint, suspend or remove all department heads. Such appointments, suspensions or removals shall be based upon merit and fitness and shall be without regard to political belief or affiliation."

■ This court now finds that Rodez had a property interest in his continued employment as the Chief of Police by virtue of Section 3.04(e)(2) of the Maywood Village Code. Admittedly, this section does not explicitly state that the Village Manager may fire Village department heads "for cause" only, nor does the section explicitly require the Village to grant department heads an opportunity to be heard prior to, or after, their dismissal.[3] *Compare Lynn v. Chicago*, No. 86 C 2207, slip op. at 4–6 (N.D.Ill. July 14, 1986) [available on WEST-LAW, DCTU database] (finding that discharged plaintiff had a property interest in his employment under Ill.Rev.Stat. ch. 24, ¶ 10–1–18.1). However, in *Cleveland*, the Supreme Court made clear that provisions for notice and hearing in state statutes are to play no role in the court's determination of whether a property interest exists in continued employment. *Cleveland*, 105 S.Ct. at 1493.

In *Cleveland*, the Parma Board of Education, which had fired respondent bus mechanic Richard Donnelly, argued that Donnelly's property interest in his position was defined by, and conditioned on, the procedures set forth in the Ohio statute regarding the discharge of state employees. The Court rejected this argument, finding the substantive right, and the procedural mechanism for enforcing that right, to be separate. The Court stated:

> The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. 'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process 'is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.'

*Cleveland*, 105 S.Ct. at 1493 (*quoting Arnett v. Kennedy*, 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974)).

Accordingly, this court now finds that Section 3.04(e)(2)'s requirement that the Maywood Village Manager base removals upon "merit and fitness" is sufficient to give Rodez a property interest in his position as Police Chief, despite the fact that this Section does not provide for notice and a hearing. The court finds Section 3.04(e)(2) similar in all relevant aspects to

Rodez claims that neither of these conditions were met in his case. Should his allegations prove true, Rodez may have a valid wrongful discharge claim under state law. However, this court finds that the complete lack of a "for cause" or "for merit and fitness" limitation on the discharge of police and fire chiefs in these sections makes clear that Rodez did not have a property interest in his position under them. Rodez therefore must rely on the local ordinance to support his Due Process claim.

3. The court notes that Village of Maywood Personnel Manual IV(C)(1) (1971) provides that "[t]he department head, with the approval of the Village Manager, may dismiss any employee for just cause." Personnel Manual V(B)(1) provides

that a permanent Village employee may appeal disciplinary actions taken by a supervisor.

It is unclear whether these provisions in the Personnel Manual apply to Rodez, a department head, and, if they do apply, whether they grant or solidify a property interest in continued employment. However, as noted in the text, *infra*, in determining whether a property interest exists, courts are not to look to the procedures provided for its deprivation. *Cleveland*, 105 S.Ct. at 1493. Instead, in a case such as this, courts are to examine whether the statute's stated bases for dismissal are sufficient to give a plaintiff a legitimate claim of entitlement to continued employment. *Cleveland*, 105 S.Ct. at 1491–92; *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

Ohio Rev.Code § 124.34,[4] although lacking the detail found in Section 124.34. As the Supreme Court found Section 124.34 created a property interest in *Cleveland,* this court now finds Section 3.04(e)(2) creates a property interest,[5] and therefore denies defendants' motion to dismiss Rodez' Due Process/property interest claim.

### B. Liberty Interest

■ When a government employee is fired, "a liberty interest is implicated if either (1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism or subversive acts or (2) the state imposes a stigma or other disability on the individual which foreclosures other opportunities....'" *Perry v. F.B.I.,* 781 F.2d 1294, 1300 (7th Cir.1986) (*quoting Munson v. Friske,* 754 F.2d 683, 693 (7th Cir.1985)). *See also Roth,* 408 U.S. at 573–74, 92 S.Ct. at 2707. The court now finds that Rodez has failed to state a claim under either of the two prongs of the *Roth/Perry* test. The court therefore grants defendants' motion to dismiss Rodez' Due Process/liberty

**4.** Section 124.34 provides in relevant part:
[No classified civil servant may be removed, except] for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office.

**5.** The statutes involved in this action and in *Cleveland* can be distinguished from that at issue in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In *Bishop,* the Court examined Marion Personnel Ordinance II(6), which provides:
*Dismissal.* A permanent employee whose work is not satisfactory over a period of time shall be notified in what way his work is deficient and what he must do if his work is to be satisfactory. If a permanent employee fails to perform work up to the standard of the classification held, or continues to be negligent, inefficient, or unfit to perform his duties, he may be dismissed by the City Manager. Any discharged employee shall be given

interest claim, without prejudice to the filing of an amended complaint.

As for the first prong of the *Roth/Perry* test, Rodez does not contend that defendants, when firing him, made statements concerning his moral character. The only statement Rodez asserts defendant made concerning the firing is contained in Rodez' Notice of Dismissal. *See supra* n. 1. Defendants' statements in the notice, that the Village Board's decision was "political" and that the Board was "generally dissatisfied with [Rodez'] performance and the visibility of the Police Department," do not approach the type of statements mentioned in *Roth* and *Perry* as implicating a liberty interest. Moreover, Rodez fails to allege that defendants disseminated his Notice of Dismissal, or any other statement regarding his termination, to anyone, and such a failure "dooms" Rodez' claim of damaged reputation. *Cleveland,* 105 S.Ct. at 1496 n. 13 (*citing Bishop,* 426 U.S. at 348, 96 S.Ct. at 2079). *See also Ratliff v. City of Milwaukee,* 795 F.2d 612, 626–27 (7th Cir. 1986).

As for the second prong of the *Roth/Perry* test, Rodez alleges that he has

written notice of his discharge setting forth the effective date and reasons for his discharge if he shall request such a notice.
*Bishop,* 426 U.S. at 344 n. 5, 96 S.Ct. at 2077 n. 5. The district court, interpreting state law, held that this provision did not guarantee a right to continued employment; rather, it merely conditioned petitioner's removal on compliance with certain specified procedures. The district court concluded that, under this provision, petitioner was an "at will" employee. The Supreme Court found the district court's interpretation "tenable" and therefore did not independently examine the state law issue, but held that petitioner's discharge did not deprive him of a property interest, based on the district court's interpretation. *Bishop,* 426 U.S. at 347, 96 S.Ct. at 2078–79. However, the Court noted that, "[o]n its face[,] the ordinance on which the petitioner relies may fairly be read as conferring such a guarantee [of continued public employment]." *Bishop,* 426 U.S. at 345, 96 S.Ct. at 2078.
In the present case, no Illinois court has interpreted this section of Maywood's Village Code. This court interprets the language of Section 3.04(e)(2) as prohibiting the discharge of Maywood department heads for any reason other than merit and fitness. Rodez, therefore, was not an "at will" employee.

been unable to obtain another Police Chief position as a result of defendants' actions. The court finds this bare allegation insufficient to establish such a loss of freedom to take advantage of employment opportunities as to invoke Due Process protections. The court recognizes that Rodez' termination may have affected, and may in the future affect, Rodez' employment opportunities. However, it is clear that "not every negative effect upon one's attractiveness to future employers violates [D]ue [P]rocess if it results without a hearing. If the government were to deny a person a license necessary to practice his profession, ... or were to diminish his chances of obtaining employment significantly, ... the [D]ue [P]rocess [C]lause might operate to require a hearing." *Lipp v. Board of Education of City of Chicago,* 470 F.2d 802, 805 (7th Cir.1972) (citations omitted). *See also Roth,* 408 U.S. at 575, 92 S.Ct. at 2708 ("It stretches the concept of liberty too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."); *Perry,* 781 F.2d at 1302; *Hadley,* 715 F.2d at 1247.

Defendants have not significantly diminished Rodez' chances of obtaining other employment. They have not disqualified Rodez from all government employment, or set up any type of "legal barrier" to Rodez' future employment. *Adams v. Walker,* 492 F.2d 1003, 1009 (7th Cir.1974), *quoted with approval in Perry,* 781 F.2d at 1302. Given Rodez' failure to allege that defendants disseminated the reasons for his dismissal to anyone, the reduction in Rodez' attractiveness to potential employers seems particularly slight. The court therefore finds that Rodez has failed to state a Due Process/liberty interest claim, and dismisses this claim without prejudice to the filing of an amended complaint.[6]

### III. First Amendment

Defendants contend that, in discharging Rodez from his position as Maywood's

Chief of Police in part for political reasons, the political loyalty/policymaker doctrine shielded their actions from First Amendment scrutiny. The Supreme Court established this doctrine in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and the Seventh Circuit developed the doctrine in *Nekolny v. Painter,* 653 F.2d 1164 (7th Cir.1981); *Shakman v. Democratic Organization of Cook County,* 722 F.2d 1307 (7th Cir.1983); and *Tomczak v. City of Chicago,* 765 F.2d 633 (7th Cir.1985).

Under this doctrine, a government employer may justify politically-based dismissals if it can demonstrate that "first, there is room for principled disagreement in the decisions reached by the employee and his superiors, and, second, [the employee] has meaningful direct or indirect input into the decisionmaking process." *Tomczak,* 765 F.2d at 641 (*citing Nekolny,* 653 F.2d at 1170). In determining whether continued employment in a governmental position may properly be conditioned upon allegiance to the political party in control, the court must look to the following factors: (1) the nature and number of responsibilities of the office; (2) whether responsibilities are not well defined or are of broad scope; (3) whether the responsibilities include acting as an advisor or formulating or implementing policy and goals; (4) whether the position includes control of a budget and employees, and, if so, how much and how many, respectively; (5) whether the position calls for close work with high governmental officials, making personal loyalty an appropriate consideration; and (6) the salary level of the position, as compared to other positions within the governmental entity. *Elrod,* 427 U.S. at 367–68, 96 S.Ct. at 2687; *Tomczak,* 765 F.2d at 642; *Shakman,* 722 F.2d at 1309; *Nekolny,* 653 F.2d at 1170. The court is to examine the powers inherent in a given

---

**6.** The court notes that, should Rodez file an amended complaint alleging that defendants made statements of the tenor required under *Roth* and *Perry,* Rodez must allege that defend-

ants made such statements in the course of his discharge. *Hadley v. County of DuPage,* 715 F.2d 1238, 1246–47 (7th Cir.1983).

office, not the functions performed by a particular occupant. *Tomczak*, 765 F.2d at 640–41. Also, whether the position's responsibilities include *final* decisionmaking authority or not is not determinative. *Nekolny*, 653 F.2d at 1170.

Defendants have the burden of establishing that the political loyalty/policymaker justification applies in this case. *Elrod*, 427 U.S. at 368, 96 S.Ct. at 2687. Defendants contend that the justification applies because the position of Maywood Chief of Police, the most responsible and high-ranking position in Maywood's Police Department, is clearly a position with both direct and indirect input of a meaningful nature into government decisionmaking on issues where there is room for principled disagreement. Defendants point to Rodez' allegation in his complaint that he "was dismissed because of his refusal to follow the Village Officials' directions on how to administer the police department." *See* Exhibit "1" to the Petition to Removal ¶ 16(a). According to defendants, Rodez concedes in this statement that there was a disagreement between Rodez and the Village Officials as to how the police department should be operated.

Chapter 4 of Maywood's Village Code outlines the personnel, structure and functions of Maywood's police department. Under Chapter 4, the responsibilities of the Chief of Police include: (1) developing rules and regulations for the conduct and guidance of the police department's 42 patrolmen and 14 other officers, which become binding upon the approval of the Village Manager; (2) prescribing the duties of the Deputy Chief of Police; (3) assigning duties to, directing, developing the training course for, and dismissing, with the concurrence of the corporate authorities, the department's 4 auxiliary police officers; and (4) making suggestions regarding the department's requirements to the Village Manager. In addition, the Maywood Personnel Manual provides that the Police Chief, as a department head, shall help the Personnel Officer determine the appropriate probationary period for new hires, recommend to the Village Manager the certification to permanent status of probationary

employees, recommend to the Village Manager the promotion or transfer of employees, establish work schedules with the approval to the Village Manager, determine the time and length of daily rest periods, send to the Village Manager a list of employees to be laid off when necessary, demote or dismiss employees with the approval of the Village Manager, suspend employees, participate in grievances and disciplinary appeal procedures with the Village Manager, approve or disapprove requests for special leaves of absence, schedule vacation times, and attend Village Board meetings at the request of the Village Manager.

As can be seen, the responsibilities of the Maywood Police Chief are numerous. Many of the responsibilities, most importantly the responsibility of developing regulations for the entire department, are not well defined and are of broad scope. The Police Chief formulates goals and policies in setting forth the regulations, in developing the auxiliary officer's training course, and in advising the Village Manager with regard to the department's requirements. Notably, under these provisions, the Police Chief works closely with the Village Manager. That there is room for principled disagreement with regard to the decisions these provisions authorize the Maywood Police Chief to make is obvious. As the *Tomczak* court observed:

> The primary function of any local governmental entity is the provision of services such as police and fire protection, public schools, hospitals, transportation, and libraries, as well as quasi-utility functions such as water, garbage, and sewage services. Elections often turn on the success or failure of the incumbent to provide these services, and, as campaigns develop, the opposing sides put forth varying proposals about how best to provide services. While the ultimate goal of all sides might be the same, there is clearly room for principled disagreement in the development and implementation of plans to achieve that goal.

*Tomczak*, 765 F.2d at 641.

■ The court therefore finds that the Maywood Police Chief has meaningful in-

put into the decisions he and the Village Manager reach, and that there is room for principled disagreement in those decisions.[7] Consequently, Rodez is "excluded from the [F]irst [A]mendment's protection from harassment for his political views." *Shakman,* 722 F.2d at 1308. The court finds that this holding best serves the purpose behind the political loyalty/policymaker justification, which is "to ensure that the [F]irst [A]mendment's protection not interfere with the workings of democratic governments and the ability of duly elected officials to implement their policies." *Shakman,* 722 F.2d at 1310. As the *Nekolny* court observed:

> A narrow definition of who is a policymaker necessarily increases the chances of 'undercut[ting] ... the implementation of the policies of the new administration, policies presumably sanctioned by the electorate.' *Elrod,* 427 U.S. at 367, 96 S.Ct. at 2687. That ability of the government to implement the will of the people is fundamental to our system of representative democracy.

*Nekolny,* 653 F.2d at 1169–70. The court finds that the position of Maywood Chief of Police falls within the broad definition of who is a policymaker.

7. Rodez contends that the court may not properly determine whether the policymaker exception applies on a motion to dismiss. While it is true that the determination of whether a position is that of a policymaker is a question of fact, *Shakman,* 722 at 1310; *Nekolny,* 653 F.2d at 1169, courts have made such determinations, when clear, on motions to dismiss, with the approval of the Seventh Circuit. *See, e.g., Shakman,* 722 F.2d at 1309–10. As in *Shakman,* the facts concerning the responsibilities of Maywood's Chief of Police are clear, and indicate that this position is the very type that must be exempted from First Amendment protection against patronage dismissals.

On the other hand, defendants contend that, even if the court finds that Maywood's Chief of Police is not a policymaker, Rodez' dismissal did not violate the First Amendment because defendants discharged Rodez for political reasons *and* because they were dissatisfied with his job performance. In other words, defendants claim that they would have discharged Rodez, because of his poor performance, even in the absence of political differences.

## IV. Conclusion

For the reasons set forth above, the court grants defendants' motion to dismiss Rodez' First Amendment and Due Process/liberty interest claims, but denies defendants' motion to dismiss Rodez' Due Process/property claim. The court grants Rodez twenty-one days from the date of this order in which to file an amended complaint.

In *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), the Supreme Court held that, once an employee demonstrates that his constitutionally protected conduct was a "motivating factor" in an adverse employment decision, the employer must show, by a preponderance of the evidence, that it would have reached the same decision even in the absence of the protected conduct. *See DeLaCruz v. Pruitt,* 590 F.Supp. 1296, 1306 (N.D.Ill.1984). In this case, it is clear from the face of Rodez' Notice of Dismissal that politics was a motivating factor in his discharge. Therefore, defendants have the burden of showing that they would have discharged Rodez despite his politics. Defendants rely on the mere statement of an additional reason for dismissal in the termination notice. The court now finds this insufficient to establish, by a preponderance of the evidence, that Rodez would have been fired, absent any political differences, for his poor job performance.