913 F.2d 327
 James M. LOHORN, Plaintiff-Appellant,
v.
Philip Q. MICHAL, City of Crawfordsville, Indiana,
Crawfordsville Metropolitan Board of Police Commissioners of
the City of Crawfordsville, Cal Black, John Bowerman, C.
Hotopp Zachary, Reverend, and Unidentified Co-Conspirators,
Defendants-Appellees.
 No. 89-3051.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 9, 1990.
Decided Aug. 30, 1990.
 
 Terry Harris and Donald G. Thompson, Young, Harris & Harvey, Crawfordsville, Ind., for plaintiff-appellant.
 John S. Capper, IV, Berry, Capper & Tulley, Crawfordsville, Ind., for defendants-appellees.
 Before BAUER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 James Michael Lohorn sued the City of Crawfordsville, Indiana, the Mayor of the City, the City Police Board, and various unnamed defendants under 42 U.S.C. Sec. 1983 for alleged violations of his first and fourteenth amendment rights arising from the Mayor's decision to demote Mr. Lohorn from the rank of Assistant Chief of Police of Crawfordsville to Detective Sergeant. The district court granted the defendants' motion for summary judgment, and Mr. Lohorn appealed. For the following reasons, we believe that summary judgment was granted prematurely. Accordingly, we reverse the judgment of the district court and remand for further proceedings.
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 Mr. Lohorn has been employed by the Crawfordsville Police Department since March 1976. During his time on the force, Mr. Lohorn has received several promotions. In 1981 he was promoted from the rank of Patrolman to that of Sergeant; in 1983 he was promoted from Sergeant to Detective Sergeant; and on August 8, 1985, during the course of a single meeting of the Crawfordsville Metropolitan Board of Police Commissioners (the Police Board), Mr. Lohorn was first promoted from the rank of Detective Sergeant to Captain of Detectives, and then also was promoted from the rank of Captain of Detectives to Assistant Chief of Police.
 
 
 4
 In November 1987, Philip Q. Michal, a Republican, was elected the new Mayor of Crawfordsville. Mr. Lohorn is a Democrat. On December 29, 1987, Mayor-elect Michal sent Assistant Chief Lohorn a letter notifying him that, as of January 1, 1988, he was relieved of his duties as Assistant Chief of Police and would assume the rank of Detective Sergeant. Mr. Lohorn sought a hearing before the Police Board concerning the demotion, but the Police Board denied this request.
 
 
 5
 Mr. Lohorn then brought suit under 42 U.S.C. Sec. 1983 against Mayor Michal, the City of Crawfordsville, the Police Board, and other individual named and unnamed defendants. Mr. Lohorn alleged that Mayor Michal's decision to demote him violated his first amendment free speech rights because the decision was politically motivated. He also alleged that the demotion without a hearing violated his due process rights under the fourteenth amendment.
 
 
 6
 The defendants moved for summary judgment, relying primarily on section 36-8-3-4(m) of the Indiana Code, which states an exception to the general procedural steps required by Indiana law before a member of the police force can be fired, demoted, or otherwise disciplined. The statutory exception states as follows:
 
 
 7
 The executive may reduce in grade any member of the police or fire department who holds an upper level policy making position. The reduction in grade may be made without adhering to the requirements of subsections (b) through (l ). However, a member may not be reduced in grade to a rank below that which the member held before the member's appointment to the upper level policy making position.
 
 
 8
 Ind.Code Sec. 36-8-3-4(m) (emphasis supplied). The parties agree that the Assistant Chief of Police of Crawfordsville qualifies as an "upper level policymaking position" under the terms of Indiana Code section 36-8-1-12, which provides in pertinent part:
 
 
 9
 "Upper level policymaking position" refers to the position held by the police chief or fire chief and to each position held by the members of the police department or fire department in:
 
 
 10
 (1) the next rank and pay grade immediately below the chief, if the authorized size of the department is:
 
 
 11
 (A) more than ten (10) but less than fifty-one (51) members, in the case of a police department....
 
 
 12
 The defendants contended that, for purposes of Mr. Lohorn's due process claim, section 36-8-3-4(m) foreclosed any property interest in the position of Assistant Chief and removed any procedural protections that might otherwise have been required before relieving Mr. Lohorn of the position. The defendants also relied on section 36-8-3-4(m), in conjunction with section 36-8-1-12, to support their motion for summary judgment on the first amendment claim. Because the Assistant Chief position met the statutory definition of an "upper level policymaking position," the defendants argued that, as a matter of law, the Assistant Chief position fell within the "policymaker" exception to the general rule established in Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), that politically motivated firings of public employees violate the first amendment.[1]
 
 
 13
 Mr. Lohorn both moved for partial summary judgment and opposed the defendants' motion for summary judgment on the first amendment and due process claims. He opposed the defendants' motion by contending, among other things, that whether the Assistant Chief position indeed was an "upper level policymaking position" was a question of material fact on which the defendants had produced no evidence other than the conclusory language of section 36-8-1-12. Mr. Lohorn also submitted an affidavit from the former Crawfordsville Chief of Police, who testified that Mr. Lohorn performed no policymaking functions during his tenure as Assistant Chief of Police.
 
 
 14
 With regard to the due process claim, Mr. Lohorn contended that the Police Board was vested, by local ordinance, with the authority to determine the grounds on which a member of the police force could be removed and that the Police Board, therefore, had an independent duty to grant him a hearing. He also argued that the rules and regulations promulgated by the Police Board and the custom and practice in Crawfordsville, in conjunction with the Crawfordsville City Ordinance, all served to create a property interest in the position of Assistant Chief of which he could not be deprived without due process.
 
 
 15
 As a fallback position on his due process claim, Mr. Lohorn argued that, even if Mayor Michal had the authority under section 36-8-3-4 to demote him, Michal still had violated his due process rights under that section by demoting him to a lower rank than he held prior to his assumption of the Assistant Chief position. This dispute concerned the effect of Mr. Lohorn's promotion, during the course of the August 8, 1975 meeting of the Police Board, from Detective Sergeant to Captain of Detectives, and then from Captain of Detectives to Assistant Chief of Police. The defendants contended that the rank Mr. Lohorn actually "held" before his promotion to Assistant Chief was the position of Detective Sergeant, rather than Captain of Detectives. They asserted that the "promotion" from Detective Sergeant to Captain of Detectives was merely "en route" to Mr. Lohorn's promotion to Assistant Chief. The defendants claimed that Mr. Lohorn never performed any duties as Captain of Detectives and never drew any salary at that position. Thus, the defendants asserted, the new Mayor's demotion of Mr. Lohorn from Assistant Chief to Detective Sergeant complied with section 36-8-3-4(m) in that Detective Sergeant was the rank Mr. Lohorn held prior to his assumption of the Assistant Chief position.
 
 
 16
 Mr. Lohorn, by contrast, pointed to the minutes of the August 8, 1985 Police Board meeting, which clearly stated that he was promoted to the "permanent rank of Captain of Detectives," R.6 (attachment), before he was promoted to the position of Assistant Chief. Mr. Lohorn also submitted his certificate of promotion, which stated that on August 8, 1985, he had been promoted to the rank of Captain of Detectives. Mr. Lohorn thus contended that, even if Mayor Michal's decision to demote him from Assistant Chief of Police was permissible under section 36-8-3-4(m), the demotion to Detective Sergeant rather than Captain of Detectives was in violation of his rights conferred under that statute.
 
 B. District Court Opinion
 1. The first amendment claim
 
 17
 The district court relied solely on sections 36-8-3-4(m) and 36-8-1-12 of the Indiana Code as its basis for rejecting Mr. Lohorn's first amendment claim. Utilizing the statutory designation of Mr. Lohorn's job as an "upper level policymaking position," the district court turned to Seventh Circuit case law on the question of when politically motivated demotions or firings violate the first amendment. The court relied on Pieczynski v. Duffy, 875 F.2d 1331, 1333 (7th Cir.1989). Citing Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Pieczynski court stated that "[t]he discharge of a public employee because of his political beliefs violates the First Amendment, unless the employee's job is a policymaking position or a position of confidence, such that his employer should have a free hand in deciding whether to retain him." Pieczynski, 875 F.2d at 1333 (citations omitted) (emphasis supplied). The district court, relying on this language, concluded that, because the Indiana statute defined Mr. Lohorn's Assistant Chief position as an "upper level policymaking position," this position was, as a matter of law, exempt from the first amendment proscription on politically motivated demotions or firings. Based on this conclusion, the district court granted summary judgment for the defendants on the first amendment claim and found it unnecessary to "reach the issue whether Lohorn was demoted for political reasons." R.3A at 6.
 
 2. The due process claim
 
 18
 The district court also granted summary judgment for the defendants on the due process claim on grounds that, under section 36-8-3-4(m), Mr. Lohorn was an "upper level policy maker" who had no protectible property interest in his rank as Assistant Chief of Police and no procedural guarantees associated with this position. The district court also considered and rejected Mr. Lohorn's fallback position under his due process claim. The court concluded that the Mayor's demotion of Mr. Lohorn from Assistant Chief to Detective Sergeant was permissible under section 36-8-3-4(m) because "[t]he evidence clearly shows that this promotion to Captain was merely en route to his immediate appointment as Assistant Chief and was a position under which he never assumed duties." R.3A at 7.
 
 II
 ANALYSIS
 A. Procedural Posture: Standard of Review
 
 19
 We review de novo a district court's grant of summary judgment. Wolf v. Larson, 897 F.2d 1409, 1411 (7th Cir.1990). Our task is to " 'decide whether the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to the judgment as a matter of law.' " Id. (quoting Wolf v. City of Fitchburg, 870 F.2d 1327, 1329 (7th Cir.1989) (quoting Colan v. Cutler-Hammer, Inc., 812 F.2d 357, 360 (7th Cir.) (per curiam), cert. denied, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987))). A motion for summary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). Moreover, in undertaking this review, we "must view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir.1989).
 
 B. The First Amendment Claim
 
 20
 This appeal turns on a rather narrow point: whether, at the summary judgment stage, the district court was correct in concluding that no relief could be afforded the plaintiff solely because the Indiana statute designated the position from which he was removed as a policymaking position. This precise issue is best elucidated, however, by first setting forth, albeit in summary fashion, the Supreme Court cases that, under the rule of stare decisis and precedent, must govern our decisions in this area.
 
 1. Guiding principles
 
 21
 A trilogy of Supreme Court cases governs our inquiry. In Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court addressed the question whether dismissal of public employees for political reasons violates the first amendment. In Elrod, a new sheriff of Cook County, Illinois discharged several lower level sheriff's office employees and threatened another with imminent discharge. The plaintiff-employees included the chief deputy of the process division, a bailiff, and a process server. The employees were dismissed solely because they were not Democrats and had failed to gain support of any Democratic leaders. Id. at 350-51, 96 S.Ct. at 2678-79. In determining whether these politically motivated discharges violated the first amendment as applied to the states through the fourteenth amendment, a plurality opinion of three Justices concluded that patronage dismissals "clearly infringe[ ] First Amendment interests." Id. at 360, 96 S.Ct. at 2683. The plurality also noted that, even if there was no property right to a government benefit such as public employment, the government could not condition receipt of such a benefit on grounds that infringe first amendment interests. Id. at 360-61, 96 S.Ct. at 2683-84 (citing Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967)); see also Rutan v. Republican Party of Illinois, --- U.S. ----, 110 S.Ct. 2729, 2735-36, 111 L.Ed.2d 52 (1990).
 
 
 22
 The plurality in Elrod also noted that "[i]t is firmly established that a significant impairment of First Amendment rights must survive exacting scrutiny." 427 U.S. at 362, 96 S.Ct. at 2684-85. The plurality explained the type of "exacting scrutiny" required in this context as follows:
 
 
 23
 The [governmental] interest advanced must be paramount, one of vital importance, and the burden is on the government to show the existence of such an interest.... In short, if conditioning the retention of public employment on the employee's support of the in-party is to survive constitutional challenge, it must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights.
 
 
 24
 Id. at 362-63, 96 S.Ct. at 2684-85 (emphasis supplied). The plurality then concluded that, because the only sufficient governmental interest advanced by these types of patronage dismissals is the need for political loyalty, this interest could be served sufficiently by limiting patronage dismissals to "policymaking positions." Id. at 367, 96 S.Ct. at 2686-87. The plurality noted, however, that the determination of policymaker status is not always clear-cut:
 
 
 25
 No clear line can be drawn between policymaking and nonpolicymaking positions. While nonpolicymaking individuals usually have limited responsibility, that is not to say that one with a number of responsibilities is necessarily in a policymaking position. The nature of the responsibilities is critical.... In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals. Thus, the political loyalty "justification is a matter of proof, or at least argument, directed at particular kinds of jobs."
 
 
 26
 Id. at 367-68, 96 S.Ct. at 2686-87. (quoting Illinois State Employees Union v. Lewis, 473 F.2d 561, 574 (7th Cir.1972) (Stevens, J., with Campbell, J., concurring in the result), cert. denied, 410 U.S. 928, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973)).
 
 
 27
 Two Justices concurred in Elrod. They argued that the plurality's broad-ranging discussion of the practice of patronage was unnecessary to the decision in the case. The concurring Justices concluded that the only substantive question to be decided was "whether a nonpolicymaking, nonconfidential government employee can be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." Id. 427 U.S. at 375, 96 S.Ct. at 2690 (Stewart, J., with Blackmun, J., concurring). The concurring Justices agreed with the plurality that such employees were protected from politically motivated discharges. Id.
 
 
 28
 The Supreme Court revisited the issue of politically motivated discharges in Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Branti involved the threatened discharge of assistant public defenders on political grounds. The Court in Branti reiterated Elrod 's recognition that, although "party affiliation may be an acceptable requirement for some types of government employment," 445 U.S. at 517, 100 S.Ct. at 1294, "it is not always easy to determine whether a position is one in which political affiliation is a legitimate factor to be considered," id. at 518, 100 S.Ct. at 1294-95 (citing Elrod, 427 U.S. at 367, 96 S.Ct. at 2686-87). The Court then explained that a mere reliance on the labels "policymaking" or "confidential" does not answer the critical inquiry in this context:
 
 
 29
 Under some circumstances, a position may be appropriately considered political even though it is neither confidential nor policymaking in character....
 
 
 30
 It is equally clear that party affiliation is not necessarily relevant to every policymaking or confidential position.... In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.
 
 
 31
 Id. (emphasis supplied); see Tomczak v. City of Chicago, 765 F.2d 633, 639-40 (7th Cir.), cert. denied, 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985). The Court then concluded, on the facts before it, that political affiliation was not a proper requirement for continued employment as an assistant public defender. Id. at 445 U.S. 519-20, 100 S.Ct. at 1295-96.
 
 
 32
 During its last Term, in Rutan v. Republican Party of Illinois, --- U.S. ----, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Supreme Court had occasion to consider whether the rule established in Elrod and Branti applied to promotion, transfer, recall from layoff, and hiring decisions based on political affiliation. In Rutan, the governor of Illinois instituted a hiring freeze that prohibited state officials from hiring new employees, filling any vacancy, creating any new position, or taking any similar acts without receiving the "express permission" of the governor. The governor established an agency to deal with the numerous requests for "express permission," and such permission was granted for certain new employee hires, promotions, transfers, and recalls from layoffs.
 
 
 33
 Several lower level employees brought suit against the governor, the Republican Party of Illinois, and various state and party officials, alleging that the governor's freeze was being used to create a political patronage system which limited the benefit of these employment decisions to those who supported the Republican Party. The Court, after reaffirming the principles established in Elrod and Branti, concluded that these principles also applied to the hiring, promotion, transfer, and recall decisions at issue in the case. Id. 110 S.Ct. at 2739. It thus concluded that the plaintiffs had stated claims upon which relief could be granted for the alleged violation of their first amendment rights.
 
 
 34
 The scope of the Elrod-Branti exception to the first amendment prohibition against politically motivated dismissals was not before the Court in Rutan because the defendants conceded that the lower level employee-plaintiffs were not in positions where party affiliation was an appropriate requirement for the effective performance of public office. Id. 110 S.Ct. at 2735 n. 5. Nevertheless, the Court did reaffirm the Elrod exception and the refinements to that exception as articulated in Branti. See id.
 
 2. Application of the principles
 
 35
 As the foregoing analysis reveals--and as this court noted in Tomczak--"[t]he Supreme Court in Branti abandoned the use of 'policymaker' status as having talismanic significance in the determination of which jobs are exempt from patronage dismissals." 765 F.2d at 641.[2] Consequently, we do not believe that the district court could place, as it did, unquestioning reliance in a state statute's labeling of a position as "policymaking."
 
 
 36
 As noted in Elrod, and as reaffirmed in Branti and Rutan, the government must demonstrate " 'an overriding interest' " of " 'vital importance' " in order to justify the impairment of first amendment interests caused by politically motivated dismissals. Branti, 445 U.S. at 515-16, 100 S.Ct. at 1293-94 (quoting Elrod, 427 U.S. at 368, 362, 96 S.Ct. at 2687, 2684); see also Rutan, 110 S.Ct. at 2736-37. The court cannot give conclusive weight to the government's assertion that it has a compelling interest in infringing on the protected interests at issue here.[3] Rather, the court must scrutinize the government's proffered justification for impairing these first amendment interests.
 
 
 37
 We do not mean to imply, of course, that the statutory designation of a position as "policymaking" is entitled to no weight in the court's assessment. Indeed, as the considered description of the state legislature, it is entitled to great weight. Moreover, although the terms "policymaking" and "confidential" are not synonymous with "party affiliation," see Branti, 445 U.S. at 518, 100 S.Ct. at 1294-95; Rutan, 110 S.Ct. at 2735 n. 5, " '[p]olicymaking' and 'confidential' do accurately describe the vast majority of offices that fall within the realm of legitimate patronage under the Branti formulation." Meeks v. Grimes, 779 F.2d 417, 420 (7th Cir.1985); see also Pieczynski v. Duffy, 875 F.2d 1331, 1333 (7th Cir.1989); Shondel v. McDermott, 775 F.2d 859, 864 (7th Cir.1985); Soderbeck v. Burnett County, 752 F.2d 285, 288 (7th Cir.), cert. denied, 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985). Nevertheless, in the final analysis, Branti and Rutan forbid the dismissal of even a "policymaking" employee unless that employee's position is "policymaking" in the sense that the "position inherently encompasses tasks that render his political affiliation an appropriate prerequisite for effective performance." Tomczak, 765 F.2d at 641; see also Bicanic v. McDermott, 867 F.2d 391, 394 (7th Cir.1989). This court has held that an individual in a "policymaking" position is subject to politically motivated dismissals if that "policymaking" position "authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." Nekolny v. Painter, 653 F.2d 1164, 1170 (7th Cir.1981), cert. denied, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982).
 
 
 38
 In this case, neither the state statute nor the local ordinances describe the duties of the Assistant Chief. The statute itself merely labels as "policymaking" the position of Assistant Chief without providing a description of the powers and duties of that position. Therefore, we cannot ascertain from any legislative description whether the position makes political affiliation an appropriate prerequisite. Despite this absence of any legislative description of the powers of the office, the defendants submitted no evidence to establish that the position of the Assistant Chief of Police authorized[4] any meaningful input into areas of decisionmaking where political allegiance would be necessary because of the potential for principled disagreement on goals or implementation strategies. Thus, the district court erred in concluding that, as a matter of law, the statutory label alone rendered Mr. Lohorn a "policymaker" within the meaning of the Elrod-Branti exception to politically motivated dismissals.
 
 
 39
 We by no means suggest that summary judgment is never appropriate in cases such as these. If, in this case, the City could have established that party affiliation actually was an appropriate requirement for the position of Assistant Chief, and that there was no genuine issue of material fact on this point, the defendants then would have been entitled to summary judgment on the issue. Moreover, we express no view on the merits of this issue. The defendants may well establish that the Assistant Chief position is one for which party affiliation is an appropriate prerequisite. Their sole reliance on the Indiana statute at the summary judgment stage is, however, insufficient to establish this proposition as a matter of law.
 
 C. The Due Process Claim
 
 40
 On appeal, there are two disputed issues regarding the due process claim. The initial issue is whether Mr. Lohorn had a protectible property interest in his position as Assistant Chief. The second issue concerns Mr. Lohorn's fall-back position on his due process claim: whether, even if the Mayor had authority to demote him from Assistant Chief, the Mayor acted in excess of his authority by demoting Mr. Lohorn to Detective Sergeant rather than Captain of Detectives. We shall consider each of these issues in turn.
 
 
 41
 1. Property interest in the position of Assistant Chief
 
 
 42
 Mr. Lohorn contends that certain Crawfordsville City Ordinances and the rules and regulations promulgated by the Police Board establish a property interest in his position as Assistant Chief. We often have repeated the standard for prevailing on a due process claim in the employment context:
 
 
 43
 To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
 
 
 44
 Wolf v. Larson, 897 F.2d 1409, 1411 (7th Cir.1990) (quoting Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir.1989) (quoting Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972))).
 
 
 45
 Property interests are, of course, created by state law. Id. (quoting Wolf v. City of Fitchburg, 870 F.2d at 1329). Thus, an apparent obstacle to Mr. Lohorn's claim is Indiana Code section 36-8-3-4(m), which expressly gives a town executive the authority to reduce, without notice or a hearing, the grade of any member of the police department who holds an "upper level policy making position." As noted earlier, there is no dispute that, under the Indiana statute, the Assistant Chief position in a city the size of Crawfordsville is defined as an "upper level policymaking position." See Ind.Code Sec. 36-8-1-12. Thus, Mr. Lohorn resorts to the only argument that can save his contention: he maintains that this statute does not apply to Crawfordsville.
 
 
 46
 Mr. Lohorn submits that, because Indiana has adopted a statutory home rule system under which Crawfordsville qualifies as a home rule unit (municipality), section 36-8-3-4 does not apply to it. There is authority for the proposition that a municipality that adopted its own merit plan prior to the effective date of Indiana's statutory merit system may continue to use that plan without being bound by the Indiana merit statutes. See City of Evansville v. International Ass'n of Fire Fighters, 516 N.E.2d 57, 60 (Ind.1987); see also Ind.Code Sec. 36-8-3-5 (stating that merit boards established by ordinance are not bound by certain provisions, including section 36-8-3-4, unless the establishing law incorporates those provisions). Moreover, one recent factually analogous case from the Northern District of Indiana, Myers v. City of Fort Wayne, 729 F.Supp. 625, 631-32 (N.D.Ind.1990), has rejected an argument similar to the one made by the defendants here that section 36-8-3-4(m) preempts a preexisting city ordinance that purports to create a protectible property interest in a job defined by section 36-8-1-12 as an "upper level policymaking position."
 
 
 47
 When Mr. Lohorn's counsel was asked at oral argument whether he specifically raised below the contention that section 36-8-3-4(m) was inapplicable to Crawfordsville because of its home rule status, counsel replied that he "may have a [waiver] problem" on this issue. However, counsel did, in his brief in support of Mr. Lohorn's motion for summary judgment, raise the contention that the Crawfordsville Ordinances created a duty on the part of the Police Board, "independent of the actions of the mayor-elect," to afford Mr. Lohorn a hearing. R.6 at 12. Mr. Lohorn also contended below that "[t]he City Ordinance and the Rules and Regulations as well as the custom and practice in Crawfordsville created a property right which entitled Lohorn to a due process hearing." R.6 at 13.[5]
 
 
 48
 We find no evidence in the record that the district court considered the Crawfordsville Ordinances and their possible interplay with section 36-8-3-4(m). Nor are we convinced that Mr. Lohorn waived this issue below. He submitted copies of the pertinent ordinances and argued that these ordinances established a property interest in his position and a right to a hearing prior to his removal from that position. Thus, we remand this issue for the district court to consider the relationship between these ordinances and the Indiana statute upon which the defendants rely.
 
 
 49
 2. Dispute over the rank "held" prior to promotion to Assistant Chief
 
 
 50
 Mr. Lohorn asserts as a fallback position on his due process claim that, even if the Mayor had the authority under section 36-8-3-4(m) to demote him from Assistant Chief of Police, the Mayor violated his due process rights by demoting him back to the rank of Detective Sergeant rather than Captain of Detectives. Although the district court granted summary judgment on the ground that Mr. Lohorn's promotion to Captain of Detectives merely was "en route" to his promotion to Assistant Chief, R.3A at 7, we conclude that there is a sufficient factual dispute concerning the effect of the promotion to Captain of Detectives to preclude summary judgment on the issue. The district court seemed to base its conclusion on the fact that Mr. Lohorn "never assumed duties" as Captain of Detectives. Id. However, it is not at all clear that assumption of duties is a prerequisite to the "holding" of an office for purposes of section 36-8-3-4(m). Mr. Lohorn has submitted as exhibits both the minutes of the Police Board meeting in which he was promoted to the "permanent rank of Captain of Detectives" and the certificate of promotion stating that he was promoted to the rank of Captain of Detectives. We agree with Mr. Lohorn that the district court impermissibly weighed the conflicting evidence in favor of the defendants on this issue. In our view, there remains a genuine issue of material fact sufficient to preclude summary judgment on the issue of whether Mr. Lohorn "held" the rank of Captain of Detectives.Conclusion
 
 
 51
 For the foregoing reasons, the district court's grant of summary judgment for the defendants on both the first amendment and due process claims is reversed and this case is remanded to the district court for further proceedings in conformity with this opinion.
 
 
 52
 REVERSED AND REMANDED.
 
 
 
 [1]
 The summary judgment motion in this case was argued and decided before the Supreme Court rendered its recent decision in Rutan v. Republican Party of Illinois, --- U.S. ----, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), in which the Court held that "the rule of Elrod and Branti [also] extends to promotion, transfer, recall, and hiring decisions based on party affiliation." Id. 110 S.Ct. at 2739. The defendants apparently conceded below, and expressly concede on appeal, that a politically motivated "demotion" falls within the prohibition established in Elrod and Branti on politically motivated discharges and threats of discharge. See Appellee's Br. at 12 (stating that the "policymaking" exception to politically motivated discharges "also applies to other disciplinary actions[,] including demotions")
 
 
 [2]
 See also Rutan, 110 S.Ct. at 2735 n. 5 (noting that Branti "refined the exception created by Elrod " by concluding that "a State demonstrates a compelling interest in infringing First Amendment rights only when it can show that 'party affiliation is an appropriate requirement for the effective performance of the public office involved' ") (quoting Branti, 445 U.S. at 518, 100 S.Ct. at 1294-95); Meeks v. Grimes, 779 F.2d 417, 419 (7th Cir.1985) (noting that, in Branti, "the Supreme Court moved away from the policymaking and confidential labels and towards a more functional analysis"); Livas v. Petka, 711 F.2d 798, 800 (7th Cir.1983) (stating that Elrod's policymaking and confidential employee exception was "revamped" in Branti )
 
 
 [3]
 Cf. Meeks, 779 F.2d at 420-21 n. 2 (rejecting as contrary to Elrod and Branti the proposition that a section of the Indiana Code defining court bailiffs as "at will" helped establish "as a matter of law" that the bailiffs were confidential employees); Shakman v. Democratic Org. of Cook County, 722 F.2d 1307, 1310 (7th Cir.) (per curiam) (concluding that Illinois statute setting forth grounds on which employee could be fired should operate as merely "one fact in [the policymaker exemption] calculus"), cert. denied, 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 258 (1983)
 
 
 [4]
 We often have stated that the powers of the office, rather than the tasks performed by a particular occupant of that office, are the focus of the Branti inquiry. See, e.g., Bicanic v. McDermott, 867 F.2d 391, 394 (7th Cir.1989) (citing Tomczak, 765 F.2d at 640)
 
 
 [5]
 Mr. Lohorn also contended below that, notwithstanding section 36-8-3-4(m), the other provisions of section 36-8-3-4 required that he be provided a hearing before he could be demoted