**Arthur M. HERMAN, Plaintiff–Appellant,**

v.

**CITY OF CHICAGO, et al., Defendants–Appellees.**

No. 88–2256.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1989.

Decided March 3, 1989.

John L. Gubbins, Chicago, Ill., for plaintiff-appellant.

Jean Dobrer, Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before CUDAHY, COFFEY and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

A shift in political winds has wafted this case here. Mayor Jane Byrne appointed Arthur Herman in February 1981 as the Director of Field Operations at Chicago's Department of Housing. Byrne lost her bid for re-election in April 1983. Harold Washington, the new mayor, posted Brenda Gaines to be Commissioner of Housing. Gaines reorganized the Department at the end of June 1984, abolishing Herman's job (among other changes). Herman, formerly on the staff of Alderman Bernard L. Stone, an opponent of Mayor Washington, contends in this suit under 42 U.S.C. § 1983 that Gaines juggled the organization of the Department to get rid of Washington's adversaries, and in particular to punish him for refusing to approve redevelopment projects Mayor Washington favored. The district court did not reach the merits. Although Herman filed the complaint in February 1986, within the two-year period for commencing § 1983 suits in Illinois, see *Anton v. Lehpamer*, 787 F.2d 1141 (7th Cir.1986), the district court concluded that the 19–month interval between discharge and complaint called for summary judgment under the doctrine of laches. 1988 WL 68039, 1988 U.S.Dist. LEXIS 5936 (N.D. Ill. June 16, 1988).

Laches comes into play when an inexcusable delay produces prejudice to the defendant. See generally *Zelazny v. Lyng*, 853 F.2d 540 (7th Cir.1988), discussing the elements of laches in employment cases in this circuit. The district court found that Herman's extended search for a lawyer who would take this case on contingent fee was not good cause, when he could have secured counsel earlier by paying a retainer. The court also concluded that Chicago suffered prejudice because the longer Herman waited, the higher the City's potential liability for back pay.

True enough, in employment cases damages add up unless the plaintiff finds a better job in the interim. Belated reinstatement also can complicate bureaucratic life. Cf. *Sampson v. Murray*, 415 U.S. 61, 83–84, 94 S.Ct. 937, 949–50, 39 L.Ed.2d 166 (1974). Whether these effects are "prejudice" for purposes of laches is a difficult question. *Zelazny* observed that "the prejudice contemplated by laches stems from the loss of evidence diminishing the defendant's chances of success at trial." 853

F.2d at 543. We said in both *Zelazny* and *Lingenfelter v. Keystone Consolidated Industries, Inc.*, 691 F.2d 339, 342 (7th Cir. 1982), that the running of wages and the inconvenience of fitting a departed employee back into the organization are not ordinarily prejudice, at least not unless the delay is exceptional—eight years in *Zelazny*. Nineteen months is a lot shorter than eight years. Too, it is difficult to see why delay that does not affect the accuracy of the fact-finding process should blot out *all* damages—the effect of granting summary judgment to the defendant—as opposed to halting accrual when the plaintiff ought to have filed. We do not pursue these points because there is another, more fundamental, problem.

To find "prejudice" in the mounting of back-pay exposure is to say that cases involving employment discrimination must be filed before the two years available in Illinois to litigants whose § 1983 cases present other kinds of claims. The district court's reasoning implies that *any* § 1983 employment case filed 19 months after discharge, or even sooner, will be dismissed unless the plaintiff has an explanation the court finds satisfactory. Statutes of limitations impose no such requirement of explanation. They operate mechanically for the most part.

It may well be that in a perfect world employment cases would have shorter statutes of limitations than cases growing out of, say, the deliberate withholding of medical care in prisons, because delay in an employment case aggravates the injury while delay in a medical case may help the court assess the extent of the injury. Congress has put shorter fuses on employment cases when addressing the subject explicitly, and so did we when establishing an outer bound for filing petitions to enforce the *Shakman* consent decree, which governs most public employment in Chicago. *Smith v. City of Chicago*, 769 F.2d 408 (7th Cir.1985) (collecting statutes). Things are otherwise, however, in litigation under § 1983. *Smith* all but held this, 769 F.2d at 413, and today we eliminate residual doubt.

Courts must obtain the statute of limitations in § 1983 cases from state law, see 42 U.S.C. § 1988, and for years disputes about which state law to use vexed the federal courts. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), established that all § 1983 cases should be treated as personal injury actions for purposes of identifying the statute of limitations. Both the Supreme Court, see *Owens v. Okure*, —— U.S. ——, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), and this court, see *Bieneman v. City of Chicago*, 864 F.2d 463, 467–70 (7th Cir.1988), have resisted all efforts to recharacterize other § 1983 claims—or in *Bieneman* claims founded directly on the Constitution—as anything other than personal injury actions. *Wilson* recognized that many § 1983 cases are not about "personal injuries", and that many seem to fit other statutes of limitations better. In *Owens* the plaintiff complained of an intentional tort for which the state had a special rule; the Court nonetheless applied the general period for personal injuries. *Bieneman* presented a claim for inverse condemnation, logically related to other actions concerning land for which states provide lengthy periods; we nonetheless applied the two-year period for personal injuries. *Owens* sums up the reasons for this hard-nosed approach:

> The practice of seeking state-law analogies for particular § 1983 claims bred confusion and inconsistency in the lower courts and generated time-consuming litigation. Some courts found analogies in common-law tort, others in contract law, and still others in statutory law.... Consequently, plaintiffs and defendants often had no idea whether a federal civil rights claim was barred until a court ruled on their case. Predictability, a primary goal of statutes of limitations, was thereby frustrated.

109 S.Ct. at 576 (footnote omitted). A single statute of limitations, one "that can be applied with ease and predictability in all 50 States", *id.* at 578, eliminates the byplay about limitations and allows the parties and the courts to concentrate their energies on the merits.

*Wilson* and *Owens* inform us that § 1983 cases growing out of discharge from employment should be treated no differently from cases growing out of police brutality (*Owens*) or airport noise (*Bieneman*). Laches treats employment cases differently from other § 1983 cases. Plaintiffs would have less than two years, as a rule, in employment cases. If the doctrine applies, then despite *Wilson* and *Owens* "plaintiffs and defendants [will have] no idea whether a federal civil rights claim [is] barred until a court rule[s] on their case". 109 S.Ct. at 576.

*Wilson, Owens,* and the practical goals that led to those decisions require us to treat this § 1983 employment case just like any other § 1983 case. As a matter of law, mounting damages do not give the former employee a shorter time to file suit than state law provides for personal injury actions. This is not to say that laches is inapplicable; when a federal court absorbs state law, it absorbs the related parts of state law that may shorten or extend the time, see *Wilson,* 471 U.S. at 269, 105 S.Ct. at 1943; *Cange v. Stotler & Co.,* 826 F.2d 581, 599–600 (7th Cir.1987) (concurring opinion) (collecting cases); it is only to say that employment cases should be treated no differently from other § 1983 cases. Delay designed to undercut the defendants' ability to obtain an accurate adjudication still could require dismissal, if state law so provided. If, for example, the plaintiff knew that an essential witness was on his deathbed, or documents were about to be disposed of, and delayed filing suit to get the benefit of the dissipation of evidence, a court might properly dismiss the suit. Arguments based on the premise that "employment cases are different" are, however, out of bounds. As the district court's decision was based wholly on the belief that employment cases are special and ordinarily must be filed before the two years allowed by Illinois for personal-injury litigation, this rationale for its decision cannot stand.

Chicago presented to the district court other grounds for summary judgment. Although that court did not reach them, grounds preserved in the district court may be urged here, without a cross-appeal, to sustain the judgment. *Massachusetts Mutual Life Insurance Co. v. Ludwig,* 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976); *Jordan v. Duff & Phelps, Inc.,* 815 F.2d 429, 439 (7th Cir.1987). We consider only one of these grounds: Chicago's contention that Director of Field Operations of the Department of Housing is a position for which one's politics properly may be taken into account under *Branti v. Finkel,* 445 U.S. 507, 517–20, 100 S.Ct. 1287, 1294–96, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); and, e.g., *Bicanic v. McDermott,* 867 F.2d 391 (7th Cir.1989); *Tomczak v. City of Chicago,* 765 F.2d 633 (7th Cir. 1985); *Nekolny v. Painter,* 653 F.2d 1164 (7th Cir.1981).

The job description for Director of Field Operations recited that the Director would recommend the establishment of policies for housing rehabilitation in Chicago and coordinate efforts to carry out those policies. The Director could issue binding instructions to the staff. Rehabilitation projects required his approval. (Herman's complaint says that his failure to sign off on politically inspired proposals led to his discharge.) The job description also called for the Director to maintain "liaison and coordination with aldermen and City Council staff, the Mayor's Office, and elected officials", and to "[a]ttend[ ] and speak[ ] at public hearings and regular meetings of the City Council ... and other organizations to represent the Department." There can be no doubt that under *Elrod, Branti,* and this circuit's cases, such a position is one for which "party affiliation is an appropriate requirement for the effective performance of the public office involved", *Branti,* 445 U.S. at 518, 100 S.Ct. at 1294–95, or, in other words, one where "principled disagreement on goals or their implementation", *Nekolny,* 653 F.2d at 1170, makes it appropriate for the political "ins" to insist that the job be held by a person committed to their political program.

Herman does not seriously contest this. He contends, instead, that these were not really his duties, and that a look at the

actual operation of the Department casts him in a less exalted role. It is far from clear that this aids him. See *Bicanic*, at 393–95. Herman did not establish the factual foundation for a close look at his job's duties, however. The City moved for summary judgment, filing a statement of material facts that it believed were uncontested and tendering the job description plus other materials (including parts of Herman's deposition) to show that Herman was a politician holding a politically sensitive job. Under Local Rule 12(f), "[a]ll material facts set forth in the statement ... served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

Chicago filed its motion and supporting materials on January 26, 1988. A briefing schedule gave Herman until February 16 to respond. The district court extended that time on motion, first to March 4 and then to March 31. The second time the court stated that no further extensions would be forthcoming. Nonetheless, the court extended the time yet again, to April 22. John L. Gubbins, representing Herman, filed on April 22 yet another request for an extension, seeking two more weeks. Her patience exhausted, the district judge denied this motion and treated as admitted the material statements of fact in the City's papers. Gubbins insists on appeal that Local Rule 12(f) is "inconsistent with the federal rules" because, "[c]ontrary to well settled law, the district court did not comb the record" to check the City's assertions. Per contra, the law is "well settled" that a court has no such obligation.

Once a party files a motion for summary judgment showing within its four corners entitlement to prevail, judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). See also, e.g., *LHLC Corp. v. Cluett, Peabody & Co.*, 842 F.2d 928, 935–36 (7th Cir.

1988); *Beard v. Whitley*, 840 F.2d 405, 410 (7th Cir.1988). A district court need not scour the record to make the case of a party who does nothing. Indeed, under the rules of the Northern District of Illinois, depositions and other materials are not in the record until introduced by a party. The materials Gubbins now says the district judge should have hunted up were not in the record then and are not there now. *Henn v. National Geographic Society*, 819 F.2d 824, 831 (7th Cir.1987). A lawyer has an ethical obligation, enforceable under Rule 11, not to seek summary judgment if the facts show that his client is not entitled to that relief, see *Goka v. Bobbitt*, 862 F.2d 646, 650–51 (7th Cir.1988), but courts will not discover that the movant slighted contrary information if opposing lawyers sit on their haunches; judges may let the adversary system take its course.

The record before the district court was a record the City made. The City's assertions of facts were properly deemed admitted under Local Rule 12(f). Far from being inconsistent with first principles of justice, as attorney Gubbins would have it, Rule 12(f) contributes to the orderly conduct of litigation. It gives counsel an incentive to respond to motions, and Gubbins had ample time to respond to this one. Cf. *Powell v. Starwalt*, 866 F.2d 964, 965–66 (7th Cir. 1989). The alternative—dismissal for want of prosecution—is even less favorable to clients; under Rule 12(f) the district court must decide whether the movant has a good legal position, while dismissal for want of prosecution can forfeit a claim that would prevail on the merits. This case, on the facts as we must take them, can have only one outcome.

AFFIRMED.