**Evelyn I. MYERS, Plaintiff,**

v.

**CITY OF FORT WAYNE, INDIANA, et al., Defendants.**

**Civ. No. F89–12.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Feb. 2, 1990.

Larry J. Burke, Fort Wayne, Ind., for plaintiff.

J. Timothy NcCaulay, City Atty., Fort Wayne, Ind., for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on plaintiff's motion for summary judgment on Count II of her complaint and defendants' motion for summary judgment on all counts of plaintiff's complaint. The issues have been fully briefed by the parties and oral arguments were heard on December 18, 1989. For the following reasons, plain-

tiff's motion will be granted and defendants' motion will be denied.

### Summary Judgment

■ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 320–25, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* 106 S.Ct. at 2512; *Valentine v. Joliet Tp. High School Dist. No. 204*, 802 F.2d 981, 986 (7th Cir.1986).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file," together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, *Celotex*, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 106 S.Ct. at 2511.

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S.Ct. at 2512.

### Factual Background

The plaintiff, Evelyn I. Myers (Myers), has been a member of the Fort Wayne Fire Department since December 15, 1975. Myers joined the fire department as a probationary dispatcher and was promoted to dispatcher on June 15, 1976. On August 24, 1978, Myers was promoted to Sergeant Dispatcher, and on January 1, 1980, she became Chief Dispatcher. On April 14, 1980 Myers was promoted to Assistant Chief of Communications. On July 20, 1981, she was assigned to the Fire Prevention Bureau as Platoon Captain. On May 14, 1986, former Mayor Win Moses (Moses), a Democrat, promoted Myers to the rank of Assistant Chief–Fire Marshal. Myers was the first female to hold that rank in the Fire Department and the first female Fire Marshal in the State of Indiana. She held the position of Assistant Chief–Fire Marshal until her demotion to Platoon Captain on January 31, 1988 by

Mayor W. Paul Helmke (Helmke), a Republican.[1]

The job description of Assistant Chief-Fire Marshal has not changed since Myers' appointment to that position and includes the following responsibilities:

Supervises record section of the Fire Department consisting of Fire Department runs, Emergency Medical Service runs, completion of State Fire Marshal fire report forms and monthly report forms. Supervises the inspections required by law of all commercial, industrial, mercantile, etc. buildings in the corporate limits including responsibility of State Article VII Codes concerning exitways, aisleways, life safety, etc. Supervises the activities of inspectors in the field of fire safety education of school children, senior citizens, service organizations, Boy Scout troops, etc. Recommends to the administration any additions or changes to the Fire Prevention Code. Supervises the investigations of any suspected arson and other activities done by the investigative section. Some public relations work for the department, such as preparing news releases, public appearances on TV, and public speaking engagements.

Prior to Myers' demotion, the Fort Wayne Fire Department command consisted of a Fire Chief, a Deputy Fire Chief, and five Assistant Chiefs. The Assistant Chiefs were specifically assigned to the areas of Fire Marshal, Administration, Labor Relations, Training and Shop. At the time of Myers' demotion, the Fire Department command had been reorganized to consist of a Fire Chief, a Deputy Fire Chief and five Assistant Chiefs assigned to the areas of Fire Marshal, Administration, Training, Shop and Building/Grounds.

Reorganization of the Fire Department command was discussed during several meetings in early January, 1988 between Fire Chief Thomas Adams (Adams)[2], Public Safety Director Robert Love (Love)[3], and Mayor Helmke. As part of the reorganization, Adams recommended that Myers be demoted. Love concurred and Helmke approved that recommendation. Thereafter, Adams met with Myers on January 28, 1988 to inform her of her demotion. Prior to the meeting with Adams, Myers had not received notice of any hearings or charges against her. During the meeting with Adams, Myers was not given a reason for her demotion. After her demotion, Myers was given an interview with Love, but he also did not inform her of any charges against her or the basis for her demotion. Myers was the only female member of the Fire Department command, and upon her demotion, she was replaced by a male officer.

Myers filed the present action in this court on January 24, 1989 under 42 U.S.C. § 1983 and Title VII (42 U.S.C. § 2000e *et seq.*). Count I of Myers' complaint alleges sex discrimination in violation of Title VII. Count II alleges violation of the Fourteenth Amendment due process rights. Count III alleges violation of equal protection of the law. Count IV alleges violation of the First Amendment.

## I. § 1983 Claims

■ The defendants contend that the defendant city along with defendants Helmke, Love and Adams, in their official capacities, are entitled to summary judgment on plaintiff's § 1983 claims because the plaintiff has failed to make any factual allegations directed at a policy or custom of the city in her complaint.

Defendants rely on *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in which the Supreme Court held that municipal liability under § 1983 could not be premised on a theory of *respondeat superior*. Furthermore, it is well established that a claim against a person in his official capacity is but another form of claim against the governmental entity of which the person is an agent.

---

**1.** Helmke took office as Mayor of Fort Wayne in January, 1988 after defeating Moses in the mayoral election that was held in November, 1987.

**2.** Thomas Adams was appointed by Helmke and became Fire Chief on January 4, 1988.

**3.** Love was appointed by Helmke and took office early in January, 1988.

*Monell, Id.* at 690 n. 55, 98 S.Ct. at 2035 n. 55; *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 870 (7th Cir.1983); *Richardson v. City of Indianapolis,* 658 F.2d 494, 501 (7th Cir. 1981); *Nekolny v. Painter,* 653 F.2d 1164, 1170 (7th Cir.1981). In *Monell,* the court stated that:

> ... a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

436 U.S. at 694, 98 S.Ct. at 2037.

Defendants' contention that the acts of the Mayor, Director of the Safety Board and Fire Chief do not constitute city policy fails to take into account the Supreme Court decision in *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In *Pembaur,* the Court held that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Id.* at 480, 106 S.Ct. at 1298. The Court hastened to add that not every decision of the city policymakers subjects the city to § 1983 liability, but only "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481, 106 S.Ct. at 1299.

The Indiana statutory framework which establishes municipal governments clearly places the final authority for employment decisions regarding fire department members with the executive branch of the city government. I.C. 36–4–9–6 gives the Mayor, as the executive, the power to appoint the chief of the fire department and the members of the public safety board.[4] I.C. 36–8–3–2[5] and I.C. 36–8–3–4[6] make it clear that the safety board has the power to make decisions regarding the employment of fire department members. I.C. 36–8–3–3 gives the fire chief "exclusive control of the fire department, subject to the rules and orders of the safety board."

The depositions of the defendants named in their official capacities show that the decision to demote Myers was not made by a single individual, but rather, was a joint decision made by the city executive and his appointees. All of these official defendants are policymakers of the city as they jointly possess the final authority regarding employment of fire department members. As such, their official acts are deemed the policy of the city for purposes of § 1983 liability.

It should be noted that defendants argue that they are entitled to qualified immunity on plaintiff's due process and first amendment claims. Before proceeding to discuss these specific § 1983 claims and the immunity arguments, this court would emphasize that qualified immunity is only an available defense to the defendants in their individual capacities. *Owen v. City of Independence, Mo.,* 445 U.S. 622, 644, 100 S.Ct. 1398, 1412, 63 L.Ed.2d 673 (1980).

## II. *Due Process Claim*

### A. *Analysis*

To assert a fourteenth amendment due process claim, Myers must first show that she had a protectable property interest in

---

**4.** I.C. 36–4–9–6 provides in pertinent part:
 (b) The city executive shall appoint:
 \* \* \* \* \* \*
 (4) a chief of the fire department;
 \* \* \* \* \* \*
 (c) The members of the board of public works and safety are three (3) persons appointed by the executive ...

**5.** I.C. 36–8–3–2 provides in part:
 (a) The safety board shall administer the police and fire departments of the city, except as provided by any statute or ordinance referred to in section 5 of this chapter.

(b) The safety board has exclusive control over all matters and property relating to the following:
 \* \* \* \* \* \*
 (2) Fire department, fire alarms, and fire escapes.

**6.** I.C. 36–8–3–4 provides in pertinent part:
 \* \* \* \* \* \*
 (b) Except as provided in subsection (m), a member of the police or fire department holds office or grade until he is dismissed or demoted by the safety board ...

her rank as Assistant Chief–Fire Marshal. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Farmer v. Lane,* 864 F.2d 473, 478 (7th Cir.1988). A protectable property interest is a "legitimate claim of entitlement" which may be created by express or implied contracts, municipal ordinances or state laws. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Farmer,* 864 F.2d at 478. Defendants concede that all of the other elements required for Myers to prevail on her due process claim exist.[7] Therefore, if Myers has a protectable property interest in her rank as Assistant Chief–Fire Marshal, she will prevail on this claim.

■ Myers contends that Fort Wayne General Ordinance No. G–29–75, enacted in 1975, creates the necessary property interest. Section 2 of the ordinance provides:

> With the exception of the Chief, every member of the Fire Department appointed by the Mayor or by the Board of Public Safety shall hold his present rank, or such rank as he may hereafter attain, unless and until he is demoted by the Board in compliance with the terms of this Ordinance. A member may be demoted only for cause other than politics, after written notice from the Chief is served upon him in person or by copy left at his last and usual place of residence notifying him of the time and place of a hearing. Said notice shall contain the written reasons for such request for demotion, and shall be served upon the member at least ten (10) days prior to the date set for said hearing.

Defendants do not contest the fact that the ordinance creates a property interest in Myers' rank as Assistant Chief. Rather, they contend that the ordinance is invalid because it conflicts with Indiana statutory law. Defendants argue that, in 1980, the state legislature enacted a provision which superseded and nullified Section 2 of G–29–75. That legislation, codified as I.C. 36–8–3–4(m), provides that:

> The executive may reduce in grade any member of the police or fire department who holds an upper level policymaking position. The reduction in grade may be made without adhering to the requirement of subsections (b) through (*l*) of this section. However, a member may not be reduced in grade to a rank below that which the member held before the member's appointment to the upper level policymaking position.[8]

Prior to enactment of the foregoing statutory amendment, the Third District Court of Appeals of Indiana upheld this particular city ordinance as a valid exercise of local government powers by the city council. *See, City of Fort Wayne v. Bentley,* 181 Ind.App. 114, 390 N.E.2d 1096 (1979). No courts have addressed the issue of the ordinance's continued validity since the 1980 enactment of I.C. 36–8–3–4(m). Therefore, this court must determine whether I.C. 36–8–3–4(m) creates a conflict with G–29–75 or in some way limits the authority of the city council to protect the ranks of upper level policymakers in the fire department.

In *Bentley,* the City of Fort Wayne argued that the city council's enactment of general ordinance G–29–75, which imposed limits on the Safety Board's power[9] to demote and transfer, was a violation of the doctrine of separation of powers[10]. The

---

**7.** Myers was demoted without notice or the opportunity to be heard prior to her demotion by city officials acting under color of state law.

**8.** The parties concede that, pursuant to the statutory definition of "upper level policymaking position" found in I.C. 36–8–1–12, the rank of Assistant Chief in the Fort Wayne Fire Department is an upper level policymaking position for purposes of statutory construction.

**9.** At the time of *Bentley,* the Safety Board's powers were set forth in I.C. 18–1–11–1 which provided in part that the Safety Board "... shall

have the care, management, supervision and exclusive control over all matters and property relating to or connected with" the fire department.

**10.** At the time *Bentley* was decided, the statutory language which limited the city council's powers provided in part:

> The common council of any city shall not elect or appoint any person to any office or employment, except as expressly provided by statute.

I.C. 18–1–1.5–26. The city argued that enactment of G–29–75 violated the edict against elec-

court held that there was no intrusion by the city council into the powers of the executive branch because the regulation of the power to demote and transfer firemen was not tantamount to the actual exercise of that power. *Id.* at 1099. Such an analysis is equally applicable to the effects of enactment of the ordinance in regards to the mayor's powers; the ordinance continues to be no more than a regulation of the mayor's discretion to demote.

The city also argued in *Bentley* that ordinance G–29–75 conflicted with the statute which gave the Safety Board "exclusive" control over all matters involving the fire department. The court held that the power granted to the safety board over members of the fire department was, in fact, not "exclusive" because other statutory provisions gave the city council the power to fix annual pay of firemen and grade members of the force by rank and length of service. Therefore, the ordinance was not in conflict with the statute "merely because it imposes certain restraints on the Board's power to manage the fire force." *Id.* at 1100.

The mayor's powers and duties are enumerated in I.C. 36–4–5–3 which provides:

The executive shall:

(1) enforce the ordinances of the city and the statutes of the state;

(2) provide a statement of the finances and general condition of the city to the city legislative body at least once a year;

(3) provide any information regarding city affairs that the legislative body requests;

(4) recommend, in writing, to the legislative body actions that the executive considers proper;

(5) call special meetings of the legislative body when necessary;

(6) supervise subordinate officers;

(7) insure efficient government of the city;

(8) fill vacancies in city offices when required by I.C. 3–13–8;

(9) sign all bonds, deeds, and contracts of the city and all licenses issued by the city; and

(10) approve or veto ordinances, orders, and resolutions of the legislative body under I.C. 36–4–6–15.

There are no provisions which give the mayor "exclusive" control over upper level policymakers in the fire department comparable to the language empowering the Safety Board. Therefore, the analysis in *Bentley* would be applicable to the mayor since he has no exclusive powers over which the city council could infringe.

To the extent that defendants raise the foregoing *Bentley* arguments again, this court finds that, contrary to defendants' contentions, the addition of subsection (m) to I.C. 38–8–3–4 does not change the applicability of *Bentley* to the issue now before this court.

First, this court notes that subsection (m) does not create an exclusive discretionary power in the city executive. While defendants' statement that subsection (m) increased the executive's powers is not wrong, it leaves the impression that the subsection granted a new and exclusive power. This is not the case. Subsection (m) is not a grant of exclusive power; it does not give the executive the exclusive right of control over upper level policymakers in the fire department. Enactment of subsection (m) did nothing more than create an exception, for the executive only, from the operation of this statutory provision only, as it previously [11] applied to upper level policymaking positions other than chief. The statute now specifically allows the mayor to make a grade reduction

---

tion or appointment to office or employment by the city council.

11. I.C. 18–1–11–3 as it existed in 1978 provided in part:

... every member of the fire and police forces, with the exception of the fire and police chiefs, including police radio operators and police signal and fire alarm operators, appointed by the mayor, the commissioners

of public safety or the board of metropolitan police commissioners, shall hold office or grade until they are removed by said board. They may be removed for any cause other than politics, after written notice is served upon such member in person or by copy left at his last and usual place of residence notifying him or her of the time and place of hearing ...

"without adhering to the requirements of subsections (b) through (*l*) of this section." The statute does *not* allow the mayor to dismiss any members of the fire or police forces who hold upper level policymaking positions,[12] nor does the statute allow the mayor to make reductions in rank without adherence to city ordinances.

Second, nowhere in other statutory provisions establishing local governments is there any express grant of exclusive power to the city executive such as defendants contend the addition of subsection (m) created. Therefore, there is nothing in the statutes which conflicts with or preempts the city's exercise of its lawmaking powers in enacting G–29–75.

Finally, although I.C. 36–8–3–4 expressly creates a property interest in office or grade of members of police and fire departments, subsection (m) expresses the intent of the state legislature to not apply that property interest to maintenance of rank by upper level policymakers. Subsection (m) does not express the intent of the state legislature to preclude local governments from creating such a property interest. As defendants conceded at oral arguments, local governments are permitted to enter into employment contracts which create property interests in employment. Defendants also conceded that the mayor could enter into an employment contract with the upper level policymakers in the fire department which would create a property interest in their rank. Surely, a lawfully enacted city ordinance which creates a property interest in employment is no more of an impermissible conflict with the statutes than a contract.

## B. *Qualified Immunity*

Based on the foregoing, this court finds that Myers had a property interest in her rank as Assistant Chief–Fire Marshal which entitled her to due process before removal from that position. Defendants concede that Myers did not receive such due process. However, this finding does not conclude the inquiry this court must make regarding Count II of plaintiff's complaint. Defendants contend that even if Myers' due process rights were violated, defendants Helmke, Love and Adams, in their individual capacities, are entitled to qualified immunity.

The Supreme Court has recognized that state officials are entitled to qualified immunity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "[T]he test for immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted." *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir.1987). "Once the defendant's actions are defined or characterized according to the specific facts of the case this characterization is compared to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law." *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir.1988). There is no qualified immunity if the defendant violated a clearly established and well litigated general proposition in which the case at hand merely presents a new wrinkle. *LeClair v. Hart*, 800 F.2d 692, 696 (7th Cir.1986) (citing *People of Three Mile Island v. Nuclear Regulatory Commissioners*, 747 F.2d 139, 148 (3d Cir.1984)).

Defendants do not contest the fact that Ordinance G–29–75 clearly established due process rights for Myers. Defendants contend, however, that passage of subsection (m) to I.C. 36–8–3–4 created a state of uncertainty as to the applicability of the ordinance despite repeated court decisions which held that the city officials were bound by the due process requirements of

---

**12.** I.C. 36–8–3–4 no longer states "with the exception of the fire and police chiefs". Since enactment of the new version of I.C. 36–8–3–4 in 1980, the only exception from the due process requirements is "[e]xcept as provided in subsection (m)", which only allows the mayor to demote the upper level policymakers. The mayor still has the power to dismiss the chiefs, but that power is based on case law which was in effect at the time *Bentley* was decided.

the ordinance. Defendants merely present "a new wrinkle" to the clearly established and well litigated proposition that they are bound by the city ordinance to provide Myers with due process.

As discussed above, subsection (m) clearly does no more than except the city executive from operation of the due process requirements of I.C. 36–8–3–4 as it applies to demotions of upper level policymakers. Subsection (m) does not preempt the field of regulation of local police and fire departments, nor does it create a conflict with the existing city ordinance. Addition of subsection (m) did not, in fact, change the state of the law nor is there any basis for a reasonable city executive to believe that subsection (m) changed the state of the law regarding the city ordinance.

The law was clearly established at the time of Myers' demotion that she was entitled to due process. Although government officials avoid personal liability for actions precipitated by reasonable but mistaken conclusions, it is abundantly clear to this court that defendants' conclusion that subsection (m) invalidated Ordinance G–29–75 was not only mistaken, but unreasonable. The named defendants, in their individual capacities, are therefore not free from liability based on qualified immunity.

Having previously determined that Myers was denied her due process rights, summary judgment in her favor on this claim is appropriate against the city and defendants Helmke, Love and Adams in both their official and individual capacities.

### III. *First Amendment Claim*

#### A. *Analysis*

Plaintiff alleges that she was demoted because she was politically affiliated with the previous mayor and did not actively support Mayor Helmke's election. The law is clear that retribution or retaliation short of discharge is actionable under the first amendment. *LaFalce v. Houston*, 712 F.2d 292, 293 (7th Cir.1983); *McGill v. Board of Education*, 602 F.2d 774 (7th Cir.1979). The test for proving the first amendment claim is set forth in *Mt. Healthy City School District v. Doyle*, 429

U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *Mt. Healthy* requires that a plaintiff show that the conduct involved was constitutionally protected and that it was a substantial or motivating factor in defendants' decision to demote her. *Id.* at 287, 97 S.Ct. at 576. Then, the burden shifts to the defendant to show that the same decision would have been reached in the absence of the protected conduct. *Id.*

Defendants concede, in their brief in support of summary judgment, that Myers political conduct was constitutionally protected. However, defendants contend that they are entitled to summary judgment on plaintiff's first amendment claim because Myers' political conduct was not a substantial or motivating factor in their decision to demote her. Defendants argue that Myers was demoted as part of a reorganization of the fire department and not because of her political ties with the previous mayor.

A factual dispute exists as to whether the fire department was actually reorganized and whether such reorganization was politically motivated. The only function that changed as part of the "reorganization" was that the Assistant Chief–Labor Relations position was deleted and the position of Assistant Chief–Building/Grounds was created. The position of Assistant Chief–Fire Marshal (Myers' position) remained unchanged, yet, the defendants contend that Myers had to be removed from that position because the "reorganization" left no room for her. Defendants additionally contend that the male who replaced Myers was more qualified than she, yet, defendants concede that Myers was qualified to perform the job of Fire Marshal. Furthermore, the male who replaced Myers, Ron Hamm, was a known active supporter of Helmke. The deposition testimony of the defendants also indicates that, although they claim that Myers was not as qualified for the Fire Marshal position as her replacement, the defendants were unaware of her qualifications. Helmke stated that he did not check or know what Myers' qualifications were. Adams stated that they never discussed qualifications and that no specific qualifications were estab-

lished for the position of Assistant Chief–Fire Marshal.

Defendants' reliance on the case of *Conroy v. City of Chicago*, 708 F.Supp. 927 (N.D.Ill.1989), regarding the first amendment claim is misplaced. In *Conroy*, the facts clearly established that a result of the challenged "reorganization" in that case was that Conroy's replacement performed different functions than Conroy had performed and had a different job title. Defendants here concede that the function of the Assistant Chief–Fire Marshal did not change as a result of the questionable reorganization.

Based on the foregoing, a trier of fact could reasonably infer that Myers was demoted for political reasons and not as part of a "reorganization" of the fire department. Therefore, this is not an appropriate determination for summary judgment. However, even if we accept as true Myers' allegation that she was demoted for political reasons, that does not end this court's inquiry. Defendants argue that the position of Assistant Chief–Fire Marshal is a policymaking position which is exempt from the prohibition against political firings expressed in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

*Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), established that a non-policymaking, non-confidential government employee cannot be discharged or threatened with discharge from a job she is satisfactorily performing upon the sole ground of her political beliefs. *Id.* at 375, 96 S.Ct. at 2690. In 1980, the Supreme Court reformulated the test in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), stating:

> In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

*Id.* at 518, 100 S.Ct. at 1294–95.

The test for determining whether the policymaker exception applies is formulated as "whether the position held by the individual authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Shakman v. Democratic Organization of Cook County*, 722 F.2d 1307, 1310 (7th Cir.), *cert. denied*, 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 258 (1983). *See also Conroy v. City of Chicago*, 708 F.Supp 927, 941 (N.D. Ill.1989). The purpose behind the policymaking exception "is to ensure that the first amendment's protection not interfere with the workings of democratic governments and the ability of duly elected officials to implement their policies." *Shakman*, 722 F.2d at 1310.

Defendants argue that the position of Assistant Chief–Fire Marshal is a policymaking position exempt from the confines of the first amendment because the job description emphasizes public contact and the responsibility for making recommendations concerning changing the fire code. Defendants also refer to a press release issued on May 15, 1986 which noted that Myers had budget supervisory responsibilities. The release stated:

> The major duties that Myers will assume as Fire Marshall [sic] include: Assisting the public in fire safety awareness, supervising code inspections and inspectors, supervising the departments of Weights & Measures, Hazardous Materials and Investigation, enforcing local, state and federal ordinances, and supervising budget expenditures for all subordinate departments.

The determination of whether Myers' position is exempt from first amendment protection is a question of fact. Such questions are generally inappropriate for resolution in the context of a summary judgment motion.

However, in *Bicanic v. McDermott*, 867 F.2d 391 (7th Cir.1989), the court affirmed the grant of summary judgment for defendants on plaintiff's first amendment claim. In doing so, the court stated that "political officials must be able to count on the sup-

port of those who prepare budgets, negotiate and sign contracts, and generally run the show at a substantial component of the government." *Id.* at 394. The Seventh Circuit also affirmed the dismissal of a similar claim in *Herman v. City of Chicago,* 870 F.2d 400 (7th Cir.1989), stating:

The job description for Director of Field Operations recited that the Director would recommend the establishment of policies for housing rehabilitation in Chicago and coordinate efforts to carry out those policies. The Director could issue binding instructions to staff. Rehabilitation projects required his approval ... The job descriptions also called for the Director to maintain "liaison and coordination with aldermen and City Counsel staff, the Mayor's Office, and elected officials", and to "[a]ttend[ ] and speak[ ] at public hearings and regular meetings of the City Counsel ... and other organizations to represent the Department."

*Id.* at 403.

Clearly, the job description and news release stating the duties of Assistant Chief–Fire Marshal do not approach the degree of control or political responsibility held by the employees in the foregoing cases. Myers had no authority to enter into contracts for the city. Although she had responsibility for supervising budget expenditures, she had no authority to prepare the budget. She had no authority to make fire codes or orders controlling the government of the fire department. She had no direct access to the mayor or city counsel, but rather, held a position in the chain of command below the mayor, safety director, chief and deputy chief. An inference can be drawn that Myers' position was not a policymaking one, thereby precluding summary judgment.

B. *Qualified Immunity*

■ Once again, defendants Helmke, Love and Adams, in their individual capacities, contend that they are entitled to qualified immunity. As set forth earlier in this order, the standard is whether defendants' conduct "violate[d] clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738. A right is clearly established if,

the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citations omitted). An official "would be entitled to qualified immunity if, at the time he acted, the law did not clearly establish that [the official] was prevented from discharging someone holding *this particular position.*" *Wrigley v. Greanias,* 842 F.2d 955, 958 (7th Cir.1988).

The facts of this case require this court to look at the law to determine whether it was sufficiently clear that the position of Assistant Chief–Fire Marshal was protected from political considerations. Having no case law dealing with this particular position, the appropriate source is closely analogous case law. *Klein v. Ryan,* 847 F.2d 368, 371 (7th Cir.1988). As discussed above, the analogous case law of *Bicanic* and *Herman* does not prohibit political firings where there is substantial public contact and control of a department. The reasonable corollary rule is that positions without substantial public contact and control of a department are protected from political firings. The job description and news release regarding Myers' position as Fire Marshal are simply insufficient evidence upon which this court can determine factually whether the job entailed the degree of control and public contact defendants' contend. This does not mean that the law was not sufficiently clear at the time of the demotion; it simply means that this court does not have the facts necessary to make the determination of whether this particular position fit within the clearly established law. Therefore, summary

judgment on defendants' qualified immunity argument must be denied.

### IV. *Equal Protection Claim*

 "In an Equal Protection claim, the petitioner faces the tougher standard of proving purposeful and intentional acts of discrimination based on her membership in a particular class, not just on an individual basis." *Forrester v. White*, 846 F.2d 29, 32 (7th Cir.1988). However, "a single discriminatory act against one individual can amount to intentional discrimination for equal protection purposes." *Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180, 1186–87 (7th Cir.1986). Although evidence of a pattern or practice of discrimination against an entire class is strong evidence that a plaintiff is a victim of discrimination, "discrimination against the plaintiff because of her membership in the class is by itself enough." *Id.* at 1187.

 Defendants contend that summary judgment should be granted in their favor on plaintiff's equal protection claim. Defendants argue that Myers cannot identify any other female employees subjected to adverse employment decisions by the defendants, and therefore, is unable to establish any inference of discriminatory intent.

Contrary to defendants' contentions, plaintiff has submitted evidence which would establish an inference of intentional discrimination. In the deposition of defendant Love, he stated that the persons considered to replace Myers and who were considered more qualified than her were "true firefighters". The inference that "true firefighters" are the men who actually fight the fires is unmistakable. When coupled with the inference to be drawn from the fact that Myers' position was filled by a man and that no women were placed in any of the command positions, it is clear that Myers has satisfied the burden of creating an inference of intentional discrimination at this stage of the proceedings. Therefore, defendants' motion for summary judgment on plaintiff's equal protection claim will be denied.

### V. *Title VII Claim*

 To prevail on her Title VII claim, plaintiff has the "ultimate burden of per-

suading the trier of fact that the defendant intentionally discriminated against [her]." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The framework of analysis of Title VII claims is well established.

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Id.* at 252–53, 101 S.Ct. at 1093–94 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973)). To meet her burden of establishing a prima facie case, Myers must show that she was qualified for the position and satisfactorily performed her duties. *Lee v. National Can Corp.*, 699 F.2d 932, 936 (7th Cir.), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983).

Defendants concede that plaintiff has established a prima facie case. However, defendants contend that they are entitled to summary judgment on Myers' Title VII claim because they have come forward with a legitimate non-discriminatory reason for her demotion which she fails to rebut. Defendants argue that Myers was demoted because the new administration reorganized the fire department and after the reorganization there was no place for Myers as she was not as qualified for the Fire Marshal position as her replacement.

Although the burden on defendants is merely "to demonstrate a legitimate, nondiscriminatory reason for [their] action," *Andre v. Bendix Corp.*, 841 F.2d 172, 175 (7th Cir.1988), plaintiff has clearly demonstrated, as discussed earlier in this order, that there is a material issue of fact as to

whether defendants actually reorganized the fire department command. Furthermore, defendants contention that Myers was demoted because she was not as qualified as her replacement has been shown to be a pretext. Defendants' depositions make it clear that qualifications were not known, checked or established for the position of Assistant Chief–Fire Marshal. Therefore, defendants are not entitled to summary judgment on plaintiff's Title VII claim.

### Conclusion

Based on the foregoing, Plaintiff's Motion for Summary Judgment on Count II of her complaint is hereby GRANTED. Defendants' Motion for Summary Judgment is hereby DENIED.