Thomas L. Kirsch, Munster, Ind., Michael K. Lulich, Park Ridge, Ill., for defendants.

**Phillip H. FALLS, Individually and d/b/a Fast Lane Foods, Plaintiff,**

**v.**

**TOWN OF DYER, INDIANA; Board of Trustees of the Town of Dyer, Indiana; Jean W. Freeland; Kenneth v. Tanis; Thomas G. Hoffman, Individually and in their capacity as Members of the Board of Trustees; Rosemary K. Delahunty, in her capacity as Zoning Administrator of the Town of Dyer, Indiana; and The Board of Zoning Appeals of the Town of Dyer, Indiana, Defendants.**

**Civ. No. H87–643.**

United States District Court, N.D. Indiana, Hammond Division.

Dec. 10, 1990.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

When this court entered its Memorandum and Order of June 24, 1988, it was not aware that there was an issue in this case with reference to a bill of attainder. A research of the record up to that time reveals the accuracy of that statement. Of course, this court is not privy to the contents of the briefs filed with the Court of Appeals or the assertions made at oral arguments there on April 25, 1989. Nonetheless, as a result of *Falls v. Town of Dyer, Indiana,* 875 F.2d 146 (7th Cir.1989), the only issue remaining to be resolved in this case has to do with bill of attainder. Such is now the law of this case.

Post-appellate proceedings have been held and a hearing and oral argument on the defendants' motions for summary judgment were held in Hammond, Indiana, on July 20, 1990. Supplemental briefs have now been filed under a deadline of December 3, 1990.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *accord Arkwright–Boston Mfrs. Mut. Ins. Co. v. Wausau Paper Mills Co.,* 818 F.2d 591, 593 (7th Cir.1987). A material question of fact is a question which will be outcome-determinative of an issue in that

case. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984).

Recently, the Supreme Court of the United States took the opportunity to address Rule 56. In two cases decided on the same day, the Court expanded the scope of the application of Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

After *Celotex*, it is clear that a non-moving party may not rest on its pleadings to avoid summary judgment. 477 U.S. at 325–26, 106 S.Ct. at 2553–54. *See also Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33 (D.C.Cir.1987), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). The initial burden is on the moving party to demonstrate "with or without supporting affidavits" the absence of a genuine issue of material fact, and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Rule 56). Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and designate "specific facts showing that there is a genuine [material] issue for trial." *Id.* Furthermore, in *Anderson*, the Court held that what facts are material in a specific case shall be determined by the substantive law controlling that case or issue. 477 U.S. at 248, 106 S.Ct. at 2510. In addition, the court went on to interpret Rule 56 as requiring that the courts analyze summary judgment motions utilizing the standard of proof relevant to that case or issue. *Id.* at 252–55, 106 S.Ct. at 2512–14. For recent academic insight into *Celotex* and *Anderson*, see Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court*, 116 F.R.D. 183, 194 (1987), where the author states:

> The recent Supreme Court cases likely require that summary judgment be more readily granted.... This emerging trend signals a new era for summary judgment, one in which the old presumptions are giving way to a policy of balancing and efficiency, and the mechanism is more appropriate to double as a sufficiency motion—allowing some sort of trial itself on the paper record.

For the judicial epilogue of *Celotex*, see *Catrett v. Johns–Manville Sales Corp.*, 826 F.2d at 33. A recent object lesson applying these ideas is found in *Puckett v. Soo Line Railroad Co.*, 897 F.2d 1423 (7th Cir.1990); *Richardson v. Penfold*, 839 F.2d 392 (7th Cir.1988). *See also Jamison–Bey v. Thieret*, 867 F.2d 1046 (7th Cir.1989). For an exact and recent analysis on this subject, see Friedenthal, *Cases on Summary Judgment: Has There Been a Material Change in Standards?* 63 Notre Dame L.Rev. 770 (1988).

Before dealing with the record in this case, it is now necessary to give more than passing attention to the constitutional provision in § 10 of Article I of the Constitution of the United States, which prohibits a state from passing any bill of attainder. A comparable inhibition is contained in § 9 of Article I limiting the powers of the national Congress. Therefore, it is useful to probe beneath the surface of Article I § 9 to get some general idea of the constitutional basics of bill of attainder.

In Federalist 44 James Madison states: "Bills of attainder, *ex post facto* laws, and laws impairing the obligation of contracts, are contrary to the first principles of the social compact, and to every principle of sound legislation. The two former are expressly prohibited by the declarations prefixed to some of the State constitutions, and all of them are prohibited by the spirit and scope of these fundamental charters."

Alexander Hamilton wrote in Federalist 78:

> The complete independence of the courts of justice is peculiarly essential in a limited Constitution. By a limited Constitution, I understand one which contains certain specified exceptions to the legislative authority; such, for instance, as that it shall pass no bills of attainder, no

*ex-post-facto* laws, and the like. Limitations of this kind can be preserved in practice no other way than through the medium of courts of justice, whose duty it must be to declare all acts contrary to the manifest tenor of the Constitution void. Without this, all the reservations of particular rights or privileges would amount to nothing.

And in Federalist 84 Hamilton prepared a laundry list of liberties, including the aforesaid provisions regarding bill of attainder, to argue that there were indeed specified rights contained in the original Constitution of the United States.

Joseph Story in 1833 described the same as follows:

Bills of attainder ... are such special acts of the legislature, as inflict capital punishments upon persons supposed to be guilty of high offences, such as treason and felony, without any conviction in the ordinary course of judicial proceedings. If an act inflicts a milder degree of punishment than death, it is called a bill of pains and penalties.... In such cases, the legislature assumes judicial magistracy, pronouncing upon the guilt of the party without any of the common forms and guards of trial, and satisfying itself with proofs, when such proofs are within its reach, whether they are conformable to the rules of evidence, or not. In short, in all such cases, the legislature exercise the highest power of sovereignty, and what may be properly deemed an irresponsible despotic discretion, being governed solely by what it deems political necessity or expediency, and too often under the influence of unreasonable fears, or unfounded suspicions.

3 J. Story, *Commentaries on the Constitution of the United States* (Boston: 1833), § 1338.

The bill of attainder provisions in both of the aforesaid clauses in Article I of the Constitution have been interpreted literally with the designs of the Framers in mind, so as to preclude trial by legislature, which would be a violation of the separation of powers concept. The clause prohibits all legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial. *See United States v. Lovett*, 328 U.S. 303, 315, 66 S.Ct. 1073, 1078–79, 90 L.Ed. 1252 (1946). A brief description of three cases under § 9, Clause 3 with reference to Congressional actions is revealing. Before examining those, one might give a passing glance to the effort of Justice Frankfurter in *Lovett* at page 318, 66 S.Ct. at page 1080 to adhere to a more traditional concept in this regard.

Another relevant case, *Ex parte Garland*, 4 Wall. (71 U.S.) 333, 18 L.Ed. 366 (1867), predated *Lovett* and was born in the immediate aftermath of the American Civil War. In *Garland* the court struck down a statute which required attorneys to take an oath that they had taken no part in the Confederate rebellion against the United States before they could practice in the federal courts.

The bill of attainder provision lay dormant for another 80 years until the court decided the above-cited *Lovett*, 328 U.S. 303, 66 S.Ct. 1073, in which a sharply divided Supreme Court held void as a bill of attainder a statute which made it a crime for a member of the Communist party to serve as an officer or an employee of a labor union. *See also United States v. Brown*, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965).

More recently, in *De Veau v. Braisted*, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960), the Court determined that a state statute was *not* a bill of attainder which prohibited any person convicted of a felony and not subsequently pardoned from holding office in a waterfront union. The court reasoned that the distinguishing feature of a bill of attainder is the substitution of a legislative for a judicial determination of guilt. *See De Veau v. Braisted*, 363 U.S. at 160, 80 S.Ct. at 1154–55.

More recently, the Court further explicated the bill of attainder concept in *Nixon v. Administrator of General Services*, 433 U.S. 425, 470, 97 S.Ct. 2777, 2803–04, 53 L.Ed.2d 867 (1977), a case dealing with the

former President's papers. In Part VII of *Nixon*, 433 U.S. at 469–484, 97 S.Ct. at 2803–11, Justice Brennan provides an excellent history lesson with reference to bills of attainder and concludes that none is present there. In *Selective Service System v. Minnesota Public Int. Research Group*, 468 U.S. 841, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984), Chief Justice Burger built on the *Nixon* historical foundations and likewise found the statute not a bill of attainder.

Another case is *Schellong v. United States Immigration and Naturalization Service*, 805 F.2d 655, 662 (7th Cir.1986), one of numerous cases involving former persons who allegedly committed Nazi atrocities and made misrepresentations to obtain United States citizenship. A challenge was made in a denaturalization and deportation provision of the so-called Holtzman amendment, 8 U.S.C. § 1251(a)(19) and § 244(a) and 8 U.S.C. § 1254(a). The reasoning and result of Judge Cummings, speaking for the Court of Appeals in *Schellong*, determined that there was no bill of attainder in the aforesaid immigration law because there were safeguards for a judicial trial. In the context of tax protests, this court has dealt with the bill of attainder provision in a number of cases. *See also Snyder v. Internal Revenue Service*, 596 F.Supp. 240 (N.D.Ind.1984); *Cameron v. Internal Revenue Service*, 593 F.Supp. 1540 (N.D.Ind.1984); and *Young v. Internal Revenue Service*, 596 F.Supp. 141 (N.D.Ind.1984). The reasoning and result in *Snyder, Cameron*, and *Young* fail to find any violation of the bill of attainder provision as against the Congress of the United States in the Internal Revenue Code.

Before turning specifically to the defendants' amended motion for summary judgment filed September 25, 1990, it is quite appropriate to point out that the opinion of the Court of Appeals placed a very substantial burden on this plaintiff when it said:

Selectivity is not the same as applying the law to one person alone. A government legitimately could enforce its law against a few persons (even just one) to establish a precedent, ultimately leading to widespread compliance. The prosecutor may conserve resources for more important cases. See *Wayte [v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) ] and, e.g., *Jarrett v. United States*, 822 F.2d 1438, 1443 (7th Cir.1987), approving selective prosecution unless the "selective decision to prosecute ... was based on ... impermissible grounds (discrimination) such as race, religion, or exercise of constitutional rights"—none of which Falls alleges. A vendor's bleat that it should not bear the competitive disadvantage of enforcement does not establish a constitutional wrong. [Citations omitted.] Persons selected by lot to fight and die (the draft used a lottery during the Vietnam War) had no complaint: the armed services did not need everyone, and randomness may be preferable to the display of a feigned expertise in making such choices. Speeders can't run to federal court when the police let many others, whose sin is worse, whiz by. Selectivity is not only inevitable but also desirable when it conserves resources. Government rationally may decide that imposing stiff penalties on 10% of offenders is the best way to enforce the law against all. This means that no firm may insist that its rival be prosecuted. [Citations omitted.] *Our Constitution requires neither perfection nor comprehensive regulation. Gaffes in the enforcement of an ordinance are neither here nor there for federal purposes; proof that the Town of Dyer erred gravely in the administration of its laws, or that someone in local government had a vendetta against Falls but that the law is being enforced rationally against others, will not get him past the Town's motion for summary judgment.*

875 F.2d at 148–49 (emphasis added).

In support of this motion for summary judgment, the defendants arrayed an abundance of sworn testimony. This included a massive deposition of Rosemary Delahunty taken February 2, 1988, 157 pages, as well as her affidavit dated May 21, 1990. In

contrast, the affidavit of plaintiff Phillip H. Falls lists something less than a dozen specific claims of non-enforcement between 1985 and 1987 and then generalizes about 53 others alleging depicting 200 sign violations. The court must consider these factual assertions of Falls as true. Even if true, the record fails to disclose the essential elements of a bill of attainder.

Whatever else the plaintiff may say in response to this amended motion for summary judgment, he cannot say in absolute terms that this ordinance was enforced only against him. The ordinance became effective on or about January 1, 1984, and for the calendar years 1984, 1985, 1986 and 1987, there was some kind of enforcement procedure against approximately sixty other persons. To be sure some of the enforcement process was informal as is often the case in small towns. Also, there were efforts to achieve voluntary compliance.

This court does not conceive that it is the obligation of this court to hold an evidentiary hearing in which every or even most of the various enforcements of this ordinance are detailed. This court reads the expressed mandate of the Court of Appeals quite to the contrary. The record of sworn testimony before this court convinces it that these defendants have provided more than enough evidence that the Town of Dyer and the other defendants are not guilty of using a legislative bill of attainder to find this plaintiff guilty of a violation of this ordinance.

The defendant invites this court to find qualified immunity as a matter of law under *Rakovich v. Wade*, 850 F.2d 1180 (7th Cir.1988), and also cites *Merritt v. Broglin*, 891 F.2d 169 (7th Cir.1989). This court is well aware of the Seventh Circuit's en banc determination in *Rakovich* that qualified immunity can be determined by the district court as a matter of law. Candidly, if this court could write from the beginning on a completely clean slate in the record of this case, it would be sorely tempted to find such qualified immunity, as was born in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), and especially *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

There is certainly no doubt that that issue can be decided preliminarily and on summary judgment which is precisely the suggestion that was made by the majority in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *See also Myers v. City of Fort Wayne, Indiana*, 729 F.Supp. 625 (N.D.Ind.1990), and *Hedge v. County of Tippecanoe*, 890 F.2d 4 (7th Cir.1989). However, this court is constrained by the previous decision of the Court of Appeals and the mandate thereof and is therefore reluctant to bottom its decision on qualified immunity.

A careful review including the six-page supplemental response of the plaintiff filed on December 3, 1990, convinces this court that neither the ordinance in question nor its enforcement fall afoul of the bill of attainder prohibition as against the states contained in Article I, § 9 of the Constitution of the United States. Therefore, this court has determined that defendants are entitled to summary judgment, as requested in the amended motion filed September 25, 1990, which is now GRANTED. Each party shall bear its own costs. The Clerk shall enter judgment accordingly. IT IS SO ORDERED.