**INTERSTATE COMMERCE COMMISSION, Plaintiff,**

v.

**LIFSCHULTZ FAST FREIGHT CORP., and Bruce E. de' Medici as Chapter 7 Trustee and Freight Audit and Collection as Chapter 7 Collection Agent, Defendants.**

**No. 91 C 7556.**

United States District Court, N.D. Illinois, E.D.

Feb. 9, 1993.

Yvonne Anagnost, Joseph Paul Bohn, Dennis J. Starks, I.C.C., Chicago, IL, for plaintiff.

Donald J. Moran, Pederson & Houpt, P.C., Chicago, IL, for defendants.

Mark L. Dressel, Morgan, Lanoff, Denniston & Madigan, Ltd., Chicago, IL, for Freight Audit and Collection, as Chapter 7 Collection Agent, defendant.

Robert B. Walker, Joseph L. Steinfeld, Jr., John T. Siegler, Sims, Walker & Steinfeld, Washington, DC, for Bucklo.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Defendant Lifschultz Fast Freight Corporation ("Lifschultz") is a motor common carrier subject to Interstate Commerce Commission ("ICC") regulation. From March 1990 through January 1991, Lifschultz provided service as a motor common carrier and assessed and collected certain filed "discount" rates as the applicable tariff charges. The shippers identified in the complaint satisfied the conditions for the application of these discount rates, and paid the applicable charges.

Subsequent to the collection of these charges, Lifschultz filed for bankruptcy protection, and defendant Bruce E. de' Medici (hereafter, the "Trustee") was appointed trustee for Lifschultz' bankruptcy estate. The Trustee, in turn, retained defendant Freight Audit Collection Agency ("FAAC") to collect balance due charges allegedly accruing from Lifschultz' common carrier transportation operations. Pursuant to its assignment, FAAC rebilled numerous shipments, including those identified in the complaint, and assessed (and in some instances collected) additional charges beyond those provided in the applicable discount tariffs on file with the ICC. Thus, by rebilling those shipments, FAAC attempted to collect a different compensa-

tion than that specified in the applicable filed discount tariff.

■ On November 25, 1991, the ICC brought this action to permanently enjoin the defendants from collecting transportation charges above their "discount rates" on file with the ICC. The defendants responded with both a motion to dismiss and a motion for summary judgment. The ICC, in turn, filed both a cross-summary judgment motion and a motion for a preliminary injunction. Although the parties have submitted voluminous briefs on the various motions, the case boils down to two basic issues: 1) whether the Trustee and/or the estate of Lifschultz are subject to ICC jurisdiction; and 2) whether the defendants have standing to challenge the "legality" and/or "lawfulness" (as those terms are used in Interstate Commerce Act jargon; see below) of Lifschultz' own filed discount rates.[1] The court will address each argument in turn.

## DISCUSSION

### A. *The ICC's Jurisdiction.*

■ In a recent Ninth Circuit decision regarding a very similar discount rate/ICC enforcement action against a bankrupt carrier and its trustee, the Ninth Circuit explained that the bankruptcy trustee "stands in the shoes of a motor carrier regulated by the ICC." *ICC v. Transcon,* 981 F.2d 402, 407 (9th Cir.1992).[2] Accordingly, the purpose of the ICC regulatory scheme would be defeated if "bankruptcy ended the ICC's enforcement powers over the carrier." *Id.* The Ninth Circuit held therefore "that the ICC is authorized by the statute to bring a civil action of enforcement against the carrier's estate" and that a federal court has jurisdiction to hear the suit. *Id.* Consistent with *Transcon,* this court holds that the ICC has standing

to bring this action, and that this court has jurisdiction.

### B. *Standing.*

Rule 56 of the Federal Rules of Civil Procedure requires this court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The court must review the record and draw all inferences from it in the light most favorable to the non-movant. *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990). In the case at bar, all of the parties concede that there are no material issues of fact. Accordingly, the case is ripe for summary judgment as a matter of law.

■ The Interstate Commerce Act, 49 U.S.C. § 10101, *et seq.* (the "ICA") requires carriers subject to ICC regulation to file their rates in tariffs with the ICC. Such carriers may also file "discount" rates which may be expressed as percentages of other rates on file with the ICC. With either type of rate, a carrier may charge and collect *only* the filed tariff rates which apply to the shipments transported. 49 U.S.C. §§ 10761, 10762. This is what is known as the "filed rate doctrine," and the Supreme Court recently reaffirmed the need for strict enforcement of this doctrine. *Maislin Industries v. Primary Steel, Inc.,*

1. Although Lifschultz has filed for protection under federal bankruptcy law, the automatic stay provision, 11 U.S.C. § 362(a) does not apply since this action is based on an action by a governmental unit to enforce its regulatory power. 11 U.S.C. § 362(b)(4).

2. Although *Transcon* is not binding precedent, it involved a nearly identical factual situation, and the court finds the opinion's reasoning persuasive. Accordingly, since the court is not aware of any Seventh Circuit precedent on point (or any contrary precedent in other circuits), the court will rely extensively on *Transcon* throughout this opinion.

497 U.S. 116, 126, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990).[3]

In the case at bar, defendants concede that they attempted to charge more than the filed discount rate, but they justify their actions on the ground that the filed discount rates were either "unlawful" or not "legal" rates. For the reasons discussed below, defendants' position lacks merit.

 In ICA jargon, a "legal" rate is the filed rate. *Maislin*, 497 U.S. at 128, 110 S.Ct. at 2767. An attack on a rate's "legality" is therefore "an allegation that the rate is not a filed rate." *Transcon*, 981 F.2d at 411. In contrast, a challenge to a filed rate is a challenge to its "lawfulness". Hence, a rate that is "legal" may nevertheless be "unlawful".

 In *Transcon*, the Ninth Circuit explained that a motor carrier's bankruptcy estate and its trustee lack standing to bring a claim alleging the unlawfulness of their own filed rates for two reasons. First, a court has no power to grant the motor carrier "reparations for its own unlawfulness." *Id.* at 412. Second, a "carrier's interests are not within the zone of interests protected by the [ICA]." *Id.* at 411. Nevertheless, according to *Transcon*, a motor carrier has standing to challenge the "legality" of its own rates. *Id.* at 411.

 In the case at bar, however, even if Lifschultz challenged the "legality" of its filed discount rates, its claim would still fail, because "[w]ithout rates on file, the Trustee has no basis for collecting undercharges." *Id.* at 412. Like the Ninth Circuit in *Transcon*, this court rejects the invitation to strike certain of Lifschultz' filed rates, "invalidating the discounts and leaving the Trustee to collect undercharges on the basis of a truncated filing never meant to stand alone." *Id.* at 412–413. After all, "[i]t is the [ICC] which has discretion to craft appropriate remedies when the rates on file with it do not themselves comport with the law." *Id.* at 413.

In sum, this court holds that Lifschultz, as the author of its filed rates, lacks standing to challenge their lawfulness. Furthermore, if Lifschultz were to successfully challenge their legality, Lifschultz would have no basis to collect "undercharges." Accordingly, pursuant to the "filed rate doctrine" and the ICA, Lifschultz is bound by its own filed tariffs and may not "charge or receive a different compensation for that transportation or service than the rate specified in the tariff." 49 U.S.C. § 10761(a). The ICC is therefore entitled to summary judgment as a matter of law.

## CONCLUSION

For all of the foregoing reasons, the court hereby 1) grants ICC's motion for summary judgment; 2) denies, as moot, the ICC's motion for a preliminary injunction; 3) denies the defendants' motion to dismiss; and 4) denies defendant's motion for summary judgment.

The court further rules that:

1) the defendants are in violation of the ICA and the filed rate doctrine as embodied in 49 U.S.C. § 10761;

2) the defendants and all persons in active concert or participation with them, are permanently enjoined and required to refrain from, in any manner, or by any device, directly or indirectly, collecting or attempting to collect any freight charges for transportation or service on behalf of Lifschultz at a rate different from the rates contained in the applicable tariffs on file with the ICC and in effect at the time of the transportation;

3) defendants de' Medici and FAAC are ordered to perform an audit and to provide an accounting, within 30 days of this order, of all freight charges collected or sought to be collected since April 4, 1991, in which discount rates authorized by tariffs on file with the ICC have been ignored and freight charges in excess of those rates have been collected or are sought to be collected;

---

**3.** As explained in *Maislin*, "[t]his rigid approach was deemed necessary to prevent carriers from intentionally 'misquoting' rates to shippers as a means of offering them rebates or discounts." *Maislin* at 126, 110 S.Ct. at 2766.

4) defendants are required to make restitution, within 60 days of this Order, to each shipper or payor who has paid, as a result of defendants' balance due bills, additional freight charges that such shippers or payors should not have been required to pay had the defendants observed applicable discount rates provided in tariffs on file with the ICC; and

5) defendants de' Medici and FAAC are required to file a report with this court, within 60 days of this Order, detailing their compliance with the Order of restitution.